OPINION
{¶ 1} Defendant-appellant, Michael L. Raver, appeals from a judgment of conviction and sentence of the Franklin County Court of Common Pleas pursuant to a jury verdict finding him guilty of two counts of gross sexual imposition.
 {¶ 2} Appellant was charged with multiple incidents of sexual misconduct involving his two stepdaughters, Casey and Melissa. Both children testified at trial regarding incidents occurring in 1999 when visiting their mother and appellant's home on Belvidere Avenue in Columbus.
 {¶ 3} Casey testified at trial that her date of birth is January 6, 1988, making her 14 years old at the time of trial. In 1999, when Casey was 11 years old, she lived with her grandparents and visited her mother and stepfather every other weekend. During one of her weekend visits in December 1999, Casey testified, appellant touched her in inappropriate places that made her uncomfortable and frightened. This incident occurred while Casey stood next to appellant in front of a computer in appellant's bedroom. No one else was in the room, although Casey's mother and half-brothers were elsewhere in the house. Casey testified that appellant placed his hand on her back, and slid it down into her blue jeans to touch her buttocks and vagina. Casey "didn't feel right" about this touching, and left to go to her bedroom in the basement. Casey testified that she did not tell anyone at the time because she was embarrassed and frightened.
 {¶ 4} That Christmas, appellant purchased for Casey a long-sleeved "belly shirt" that Casey thought was inappropriately revealing. Casey did not visit her mother and stepfather's home on Belvidere Avenue after that Christmas.
 {¶ 5} Casey's testimony acknowledges that she at first denied having been sexually abused because she was frightened and embarrassed by the incident. Later, after her sister came forward with similar allegations, Casey came forward herself.
 {¶ 6} Melissa testified similarly with respect to her visitation schedule with her mother and appellant. Melissa testified that during one of these visits in 1999, when she was 14, appellant followed Melissa down to the basement where her bedroom was located and took her pants off. Appellant then touched her genitals and inserted his finger inside her vagina. Melissa testified that there had been previous occasions upon which appellant had similarly touched her.
 {¶ 7} Melissa also testified that she was too frightened to say anything at the time. Melissa testified that appellant was a stern disciplinary figure in the home, and that he would whip the children with a belt or otherwise inflict strict punishment. Melissa corroborated Casey's testimony regarding the purchase of an inappropriate shirt for Casey, and testified that she herself had received a fishnet shirt from appellant at Christmas in 1999. Melissa testified that as a result of appellant's actions she is currently in counseling to help her deal with the aftereffect of the molestation.
 {¶ 8} Appellant testified on his own behalf and asserted his devotion to and affection for his stepdaughters. He denied any sexual conduct or contact with the girls.
 {¶ 9} The jury returned a verdict of not guilty on the four counts involving Melissa but guilty of two counts of gross sexual imposition in violation of R.C. 2907.05, a felony of the third degree, involving Casey. The trial court denied appellant's request for a pre-sentence investigation. The trial court subsequently sentenced appellant to five years incarceration on each count, the two sentences to be served concurrently. In imposing this maximum sentence, the trial court found that a minimum sentence would demean the seriousness of the offense based on the victim's age, the fact that she was a stepdaughter in appellant's custody and control at the time of the offense, and the demonstrated psychological effect upon the victim. The trial court also found that appellant's acts demonstrated a pattern of abuse and that appellant was likely to re-offend, but that the two counts for which he had been convicted were perpetrated in a single incident, justifying the concurrent sentences.
 {¶ 10} At the time of sentencing, the trial court conducted a further hearing pursuant to R.C. 2950.09, and found that appellant should be adjudicated a sexual predator, subject to the registration and notification provisions of R.C. Chapter 2950. The trial court again noted the age of the victim, the relationship of appellant to the victim, the demonstrated pattern of abuse, the effect upon the victim, and in addition noted the demonstrated lack of remorse or acceptance of responsibility by appellant.
 {¶ 11} Appellant has timely appealed, and brings the following assignments of error:
 {¶ 12} "[1.] The trial court erred when it entered judgment against the defendant for two counts of gross sexual imposition when the evidence was not sufficient to sustain either verdict and the manifest weight of the evidence would not support them.
 {¶ 13} "[2.] The trial court erred in sentencing defendant-appellant to a maximum term of incarceration where the factual criteria to warrant a maximum term was not present and without first considering and rejecting a minimum sentence for defendant-appellant, who has not previously served a prison term.
 {¶ 14} "[3.] The evidence before the trial court was legally insufficient to establish that defendant-appellant was a sexual predator, subject to the lifetime registration and community notification provisions of R.C. 2950.09.
 {¶ 15} "[4.] Defendant-appellant was denied his sixth amendment
right to counsel when trial counsel failed to: obtain expert assistance in defending defendant-appellant in the sexual predator hearing; and, make an adequate record of the pertinent aspects of defendant-appellant's history relating to the factors set forth in R.C. 2950.09(B)(2) probative of whether the offender is likely to engage in the future in one or more sexually oriented offenses.
 {¶ 16} "[5.] Mr. Raver's rights to the effective assistance of counsel as guaranteed by the sixth andfourteenth amendments to the United States Constitution and Article I, § 10 of the Ohio Constitution were violated."
 {¶ 17} Appellant's first assignment of error asserts that the verdict was against the manifest weight of the evidence. Specifically, appellant argues that the evidence failed to prove beyond a reasonable doubt that the alleged sexual contact by appellant was done for the purpose of sexual arousal or gratification of either appellant or the victim, as required by R.C. 2907.01(B), which defines the term "sexual contact" as used in R.C. 2907.05, which defines the crime of gross sexual imposition.
 {¶ 18} The Ohio Supreme Court in State v. Thompkins (1997),78 Ohio St.3d 380, set forth the following standard for a court addressing a criminal conviction based upon a claim that the verdict is against the manifest weight of the evidence:
 {¶ 19} "`The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" Id. at 387, quoting State v. Martin (1983),20 Ohio App.3d 172, 175. When reviewing a conviction on manifest weight of the evidence grounds, we do not construe the evidence most strongly in favor of the state. Instead, we must engage in a "limited weighing of the evidence to determine whether there is sufficient competent, credible evidence to permit reasonable minds to find guilt beyond a reasonable doubt." State v. Conley (Dec. 16, 1993), Franklin App. No. 93AP-387. A court of appeals will not reverse a jury verdict on manifest weight grounds unless all three appellate judges concur. Thompkins, at paragraph four of the syllabus.
 {¶ 20} In contrast, the legal concept of sufficiency of the evidence to support a conviction involves a different determination. Thompkins, at 386. "`Sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." Id., quoting Black's Law Dictionary (6th Ed. 1990) 1443. Thus, a determination as to whether the evidence is legally sufficient to sustain the verdict is a question of law. Id. The relevant inquiry upon a review of the sufficiency of the evidence is whether "after viewing the evidence in a light most favorable to the prosecution `any' rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia (1979), 443 U.S. 307, 99 S.Ct. 2781.
 {¶ 21} A defendant will not be entitled to reversal on manifest weight or insufficient evidence grounds merely because inconsistent testimony was heard at trial. "While the jury may take note of the inconsistencies and resolve or discount them accordingly, see [State v.] DeHass [1967, 10 Ohio St.2d 230], such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." State v. Nivens (May 28, 1996), Franklin App. No. 95AP-1236. A jury, as finder of fact, may believe all, part, or none of a witness's testimony. State v. Antill (1964), 176 Ohio St. 61, 67.
 {¶ 22} Appellant correctly states that his conduct in touching Casey's buttocks and vagina qualifies as impermissible "sexual contact" only if the touching was for the purpose of sexual arousal or gratification. R.C. 2907.05(A)(4); 2907.01(B). However, we disagree with appellant's contention that there was insufficient evidence to support the jury's verdict, or that the verdict is against the manifest weight of the evidence in this respect. "In making its decision the trier of fact may consider the type, nature and circumstances of the contact, along with the personality of the defendant. From these facts, the trier of fact may infer what the defendant's motivation in making the physical contact with the victim." State v. Cobb (1991), 81 Ohio App.3d 179, 185. The evidence supports the inference which the jury manifestly drew from appellant's conduct. Appellant, according to the victim's testimony, touched an 11 year old girl on her back, buttocks, and then vagina. Appellant presented no circumstances which would provide an innocent, non-sexual explanation for this touching. No medical necessity was alleged, or indication given that the touching was part of some innocent parental activity such as dressing or bathing the child, which in any event would have been unlikely because of the child's age. The victim's description left no doubt that she had not mistaken a mere love pat on her bottom for something worse, but demonstrated overt and deliberate manual touching of both Casey's buttocks and genitals, which occurred when appellant and the victim were alone in a bedroom.
 {¶ 23} The jury could reasonably draw an inference of sexual gratification from the circumstances and nature of appellant's touching of the victim, and we accordingly find that appellant's first assignment of error is without merit and is overruled.
 {¶ 24} Appellant's second assignment of error asserts that the trial court erred in sentencing appellant to the maximum term for the crimes for which he was convicted. Appellant was convicted of a third-degree felony, subject under R.C. 2929.14(A)(3) to a definite sentence between one and five years. The court imposed the maximum term of five years for each count. R.C. 2929.14(B) addresses sentencing for offenders who have not previously served a prison term:
 {¶ 25} "[I]f the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender and if the offender has not previously served a prison term, the court shall impose the shortest prison term authorized for the offense pursuant to division (A) of this section, unless the court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others."
 {¶ 26} R.C. 2929.14(C) addresses circumstances under which the trial court should impose the maximum sentence:
 {¶ 27} "Except as provided in division (G) of this section or in Chapter 2925 of the Revised Code, the court imposing a sentence upon an offender for a felony may impose the longest prison term authorized for the offense pursuant to division (A) of this section only upon offenders who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders under division (D)(3) of this section, and upon certain repeat violent offenders in accordance with division (D)(2) of this section."
 {¶ 28} R.C. 2929.19(B)(2)(d) addresses the findings which a trial court should make on the record when imposing sentence:
 {¶ 29} "(2) The court shall impose a sentence and shall make a finding that gives its reasons for selecting the sentence imposed in any of the following circumstances * * * (d) If the sentence is for one offense and it imposes a prison term for the offense that is the maximum prison term allowed for that offense by division (A) of section 2929.14 of the Revised Code, its reasons for imposing the maximum prison term."
 {¶ 30} The Ohio Supreme Court has stated that "minimum sentences are favored for first-time imprisonment and maximum sentences are disfavored generally." State v. Edmonson (1999), 86 Ohio St.3d 324, 325.
 {¶ 31} The state points out on appeal that, despite the more definite and restrictive sentencing scheme put in place by S.B. 20 in 1996, the trial court retains discretion in determining the ultimate sentence to be given to a convicted felon. R.C. 2929.12(A). Reversible error predicated on an error in application of the sentencing guidelines will be found on appeal only if the defendant makes a clear and convincing showing that the record does not support his sentence or that the sentence is contrary to law. R.C. 2953.08(G)(2)(a) and (b).
 {¶ 32} At the sentencing hearing, the court specifically found under R.C. 2929.14(C) that appellant poses a great likelihood of committing future crimes. The trial court based this conclusion upon its interpretation of appellant's conduct with his stepdaughters as demonstrating a pattern of abuse, and upon the demonstrated high rate of recidivism in cases where the offender sexually abuses a child, particularly a family member.
 {¶ 33} Although appellant was not convicted of the charges involving Melissa, the trial court was entitled to consider the evidence given by Melissa at sentencing, including her contention that appellant had repeatedly molested her since she was five years old. In State v. Epley (Aug. 25, 1998), Franklin App. No. 97AP-1467, this court held that "'[A] sentencing judge may take into account facts introduced at trial relating to other charges, even ones of which the defendant has been acquitted.'" Id., quoting United States v. Watts (1997), 519 U.S. 148,117 S.Ct. 633. While this court held otherwise in earlier cases, see, e.g., Columbus v. Jones (1987), 39 Ohio App.3d 87, 90, Epley is the more recent case and follows Ohio Supreme Court precedent. State v. Wiles (1991), 59 Ohio St.3d 71, 78.
 {¶ 34} In addition, the trial court found that appellant had committed the worst form of the offense. This is borne out by the testimony before the trial court. Appellant exploited his position of trust as an authority figure in the victim's life when committing the offenses for which he was convicted. The molestation was directly tied to appellant's status as a harsh disciplinary figure in the home, which caused the victim to hesitate to report the abuse. Because of the victim's young age, her testimony regarding the psychological harm caused by the offenses, and the circumstances under which appellant committed the offenses, the trial court's conclusion in this respect is warranted.
 {¶ 35} Appellant also challenges the trial court's conclusion under R.C. 2929.14(B) that he was not entitled to receive the minimum sentence as a first-time offender because doing so would demean the seriousness of the offense and not adequately protect the public from future crime by appellant. The court's factual findings pursuant to R.C. 2929.14(C) are equally applicable here. See, also, State v. Evans, Franklin App. No. 02AP-230, 2002-Ohio-6559. The evidence before the trial court supports the conclusion that the seriousness of appellant's conduct would be demeaned by imposition of a minimum sentence, despite appellant's lack of prior incarceration.
 {¶ 36} Finally, we address appellant's assertion that the trial court's justifications under R.C. 2929.14(B) were articulated after the trial court had imposed the sentence, and thus represented an after-the-fact justification by the trial court for the sentence imposed and making the rationale given for the sentence a mere "afterthought." This argument is not well-taken. There is no requirement upon the trial court to articulate its findings and sentence in any particular order, and it is in fact not unusual, in this court's experience, for the trial court to provide its reasoning after having pronounced the sentence. The order of things at sentencing is thus of no great consequence, and in fact, R.C. 2929.19(B)(2) can be read as contemplating that sentence shall be pronounced before the reasons for it are given: that section states that the court "shall impose sentence and shall make a finding that gives its reasons for selecting the sentence imposed."
 {¶ 37} For the foregoing reasons, all of the arguments and issues raised in appellant's second assignment of error are not well-taken, and the assignment of error is overruled.
 {¶ 38} Appellant's third assignment of error asserts that there was insufficient evidence before the trial court to support the finding that he should be adjudicated a sexual predator. R.C. 2950.01(E) defines a "sexual predator" as a person who "has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses."
 {¶ 39} "Although the standard set forth in R.C. 2950.01(E) looks toward the defendant's propensity to engage in sexually oriented behavior in the future, a trier of fact may look at past behavior as well since past behavior is often an important indicator of future propensity." State v. Maye (1998), 129 Ohio App.3d 165, 173.
 {¶ 40} Under R.C. 2950.09(B)(3), the trial court, in making its determination, should consider a number of enumerated factors when assessing a defendant's propensity to re-offend:
 {¶ 41} "In making a determination under divisions (B)(1) and (3) of this section as to whether an offender is a sexual predator, the judge shall consider all relevant factors, including, but not limited to, all of the following:
 {¶ 42} "(a) The offender's or delinquent child's age;
 {¶ 43} "(b) The offender's or delinquent child's prior criminal or delinquency record regarding all offenses, including, but not limited to, all sexual offenses;
 {¶ 44} "(c) The age of the victim of the sexually oriented offense for which sentence is to be imposed or the order of disposition is to be made;
 {¶ 45} "(d) Whether the sexually oriented offense for which sentence is to be imposed or the order of disposition is to be made involved multiple victims;
 {¶ 46} "(e) Whether the offender or delinquent child used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting;
 {¶ 47} "(f) If the offender or delinquent child previously has been convicted of or pleaded guilty to, or been adjudicated a delinquent child for committing an act that if committed by an adult would be, a criminal offense, whether the offender or delinquent child completed any sentence or dispositional order imposed for the prior offense or act and, if the prior offense or act was a sex offense or a sexually oriented offense, whether the offender or delinquent child participated in available programs for sexual offenders;
 {¶ 48} "(g) Any mental illness or mental disability of the offender or delinquent child;
 {¶ 49} "(h) The nature of the offender's or delinquent child's sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;
 {¶ 50} "(i) Whether the offender or delinquent child, during the commission of the sexually oriented offense for which sentence is to be imposed or the order of disposition is to be made, displayed cruelty or made one or more threats of cruelty;
 {¶ 51} "(j) Any additional behavioral characteristics that contribute to the offender's or delinquent child's conduct."
 {¶ 52} The state is required to show a future propensity to re-offend by clear and convincing evidence. R.C. 2950.09(B)(4). "* * * Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." Cross v. Ledford (1954),161 Ohio St. 469, 477. (Emphasis sic.)
 {¶ 53} There was clear and convincing evidence before the trial court to support the conclusion that appellant was more likely than not to commit another sexually oriented offense. As at sentencing, when considering whether appellant should be adjudicated a sexual predator, the trial court could consider evidence aside from that related exclusively to the crimes for which he was convicted. State v. Cook (1998), 83 Ohio St.3d 404, 425. In particular, the trial court in the present case could consider Melissa's accusations that appellant had molested her on multiple occasions, even though the jury did not find this sufficient to convict appellant on the charges involving Melissa. The commission of multiple sex offenses over a period of time could be taken to demonstrate that appellant suffers from a compulsion which will drive him in the future to commit similar sexual offenses. State v. Bartis (Dec. 9, 1997), Franklin App. No. 97AP-600, affirmed, 1998,84 Ohio St.3d 9. We further note that the youthful age of appellant's victims, in addition to aggravating the nature of the crimes for which he was convicted, demonstrates appellant's willingness to exploit the weak and defenseless, and increases the likelihood of recidivism. State v. Ferguson (Mar. 31, 1998), Franklin App. No. 97AP-858; State v. Daniels (Feb. 24, 1998), Franklin App. No. 97AP-830.
 {¶ 54} Appellant correctly points out that the offense for which he was sentenced does not involve multiple victims, threats of cruelty or injury, nor the sort of extreme cruelty sometimes shown in such cases, all of these representing the absence of some of the other statutorily defined factors to be considered under R.C. 2950.09(B)(3). However, as we stated above, the state is not required to show that all the elements to be considered by the trial court in a sexual predator adjudication be demonstrated, only that some be shown to a degree demonstrating the likelihood that the defendant will re-offend. The circumstances surrounding the crime committed by appellant, as set forth above, support the sexual predator finding. In addition, refusal to acknowledge the crime and lack of remorse will weigh in favor of a sexual predator finding. State v. Ivery (May 23, 2000), Franklin App. No. 99AP-628. Appellant demonstrated neither acceptance of responsibility nor any sort of relevant regret at trial, at sentencing, or at the predator adjudication, and thus exhibited a lack of meaningful remorse. This weighs in favor of adjudicating appellant as a sexual predator. The sum total of the evidence and appellant's conduct support the trial court's determination, which is not undermined merely by the absence on these facts or some of the statutory factors under R.C. 2950.09(B).
 {¶ 55} In summary, considering the factors set forth in R.C. 2950.09(B)(3), the trial court's finding that appellant should be classified under R.C. Chapter 2950 as a sexual predator is supported by the evidence. Appellant's third assignment of error is accordingly overruled.
 {¶ 56} Appellant's fourth assignment of error asserts that he received ineffective assistance of trial counsel at the sexual predator hearing. Specifically, appellant asserts that trial counsel failed to request funds to obtain expert assistance and testimony for the hearing, and failed to create an adequate record pertaining to the issue of whether or not appellant was likely to re-offend.
 {¶ 57} In order to establish a claim of ineffective assistance of trial counsel, a defendant must first demonstrate that his trial counsel's performance was so deficient that it was unreasonable under prevailing professional norms. Strickland v. Washington (1984),466 U.S. 668, 687-88, 104 S.Ct. 2052, 2064-65 A defendant must then establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694, 104 S.Ct. at 2068.
 {¶ 58} "* * * A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.'" Id. at 689, 104 S.Ct. at 2065, quoting Michel v. Louisiana (1955), 350 U.S. 91,101, 76 S.Ct. 158, 164.
 {¶ 59} Appellant asserts that trial counsel put so little information before the trial court that the court had only the information presented by the state, and the bare fact of the conviction itself, upon which to base its decision in the predator hearing. Counsel on appeal does not specify what advantageous testimony might have been furnished by an expert, and we are thus asked to speculate that such testimony would have been helpful to appellant. The record on appeal does not demonstrate trial counsel's reasons or lack of reasons, for failing to seek assistance of an expert. Furthermore, in the context of ineffective assistance of trial counsel claims, it is inappropriate for this court to discount the equal possibility that the expert, when presented with the testimony of abuse by appellant of both Melissa and Casey, might conclude that appellant in fact did present a risk of re-offending. As stated above, when examining an ineffective assistance of trial counsel claim, the conduct of trial counsel must be examined with every effort to discount the advantages of hindsight. It is impossible to assess, in the present case, trial counsel's reasons for not invoking the assistance of an expert, and sound reasons can be found for not doing so. Trial counsel could have been aware that appellant was likely to make a poor impression when interviewed by such an expert, whose testimony would then be correspondingly unhelpful. On the present record, this court cannot state that appellant's counsel's strategic decision not to invoke the assistance of an expert at the predator hearing does not fall within the "wide range of reasonable professional assistance."
 {¶ 60} With respect to appellant's assertion that trial counsel was ineffective for failure to address and stress the favorable R.C. 2905.09(B)(3) factors in the case, the record does not support this contention. Counsel did object, unsuccessfully, to the consideration of the acquitted conduct involving Melissa. Counsel did point out the absence of reported transgressions during the two years that appellant was free on bond awaiting trial. Counsel argued, unsuccessfully, that the court should find that appellant's conduct did not constitute a pattern of abuse and should be considered only as to one victim on a single occasion, because of the verdict acquitting charges with respect to Melissa. The failure to stress other positive factors in the present case can be attributed to counsel's desire to stress the more important factors. The positive factors which appellant feels should have been presented by counsel at the hearing include general absence of cruelty or exertion of physical force, absence of prior convictions for sexually oriented offenses or criminal history generally, and the absence of physical injury to the victims. These factors were quite obvious from the testimony heard at trial and were at least implicitly acknowledged by the court, and no prejudice to appellant can be found from a failure to reiterate the obvious, which might have diluted trial counsel's attempts to contest the aggravating factors argued by the state. Since the state argued principally based upon the age of the victims, the circumstances of the crime, and appellant's position as a disciplinarian in the household, the need to rebut factors not argued by the state is not immediately apparent.
 {¶ 61} In summary, we do not find that trial counsel's conduct fell outside the range of reasonable professional assistance. Moreover, even had trial counsel proceeded as appellant now urges she should have, we do not find a reasonable probability that the result of the sexual predator proceeding would have been different. We therefore do not find that appellant was denied the effective assistance of trial counsel at the predator hearing. Therefore, appellant's fourth assignment of error is overruled.
 {¶ 62} Appellant's fifth assignment of error asserts that appellant was denied effective assistance of trial counsel when trial counsel failed to oppose a motion by the state to consolidate for trial the cases involving Casey and Melissa, which had been charged in separate indictments. In addition, appellant asserts that trial counsel failed to request a limiting instruction that evidence introduced as to one child could not be considered for the purpose of determining guilt as to incidents involving the other child. Appellant further argues that trial counsel was ineffective for failing prior to the day of trial to request an expert to review law enforcement procedures employed in questioning the victims, despite indications that improper questioning had taken place prior to trial. Appellant also asserts that trial counsel failed to dismiss a juror when it became apparent, after the jury was impaneled, that the juror might be biased against appellant. Finally, appellant asserts that defense counsel failed to object to the trial court's erroneous definition of "reasonable doubt" given to the jurors in preliminary instructions.
 {¶ 63} With respect to trial counsel's failure to oppose the motion for joinder, the ineffective assistance of counsel test set forth in Strickland can be summarized, in cases involving a failure to make a motion on behalf of the defendant or oppose a motion by the state, as requiring the defendant to: (1) show that the motion or opposition thereto was meritorious, and (2) show that there was a reasonable probability that the verdict would have been different had the motion been made or opposed. State v. Santana (2001), 90 Ohio St.3d 513; State v. Lott (1990), 51 Ohio St.3d 160.
 {¶ 64} Again, it cannot be discerned on this record why trial counsel did not oppose joinder, or subsequently seek a severance. Many legitimate strategies could justify this position, including the defendant's preference for a single trial rather than the "harassment, delay, trauma and expense of multiple prosecutions." State v. Schaim (1992), 65 Ohio St.3d 51, 58. The defense could also have pursued a strategy that one sister's less-credible testimony might taint that of the other; the jury in fact chose to disbelieve Melissa, and any profit to be gained from Melissa's lack of credibility when attempting to undermine Casey's accusations as well could only be pursued if the charges involving both girls were tried together. In fact, the record does reflect that trial counsel did pursue this tactic of using the opportunity to attack the victims' credibility: "[S]ome place along there Casey gets a chance to talk to Melissa, and all of a sudden Casey is saying something happened * * * all of a sudden, right around this very same time, Melissa's complaint comes up that Mike touched her for the first time inappropriately." (Tr. 100.)
 {¶ 65} Even if defense counsel had opposed the motion for joinder or subsequently moved for severance, the trial court would have been well within its discretion in maintaining the joinder. "The law favors joining multiple offenses in a single trial under Crim. R. 8(A) if the offenses charged `are of the same or similar character.' * * * A defendant [moving for severance] under Crim. R. 14 has the burden of affirmatively showing that his rights were prejudiced; he must furnish the trial court with sufficient information so that it can weigh the considerations favoring joinder against the defendant's right to a fair trial * * *." Lott at 163, quoting State v. Torres (1981), 66 Ohio St.2d 340.
 {¶ 66} The state argues in the present case that, even had joinder been opposed, the trial court would properly have ruled that there was no potential prejudice to appellant which would justify severance. Appellant bases his argument for the applicability of severance on the proposition that all charges involving Melissa would be inadmissible under Evid. R. 404(B) in the trial of charges involving Casey, and vice versa. The state counters by asserting that, since Evid. R. 404(B) permits evidence of other acts in order to show the actor's motive and intent, the evidence of molestation as to one child would be admissible as motive or intent to molest the other, even if separate trials were held. For this proposition the state cites Schaim, supra. We find that Schaim stands, to the contrary, for the proposition that other acts evidence of sexual conduct would be severely limited if the accusations involving two victims in that case had given rise to two separate trials. Testimony of other sexual conduct by the defendant, the Ohio Supreme Court held in Schaim, would be limited to the question of the defendant's purpose in improperly touching his two young victims in instances in which the defendant freely admitted the touching but denied that it was for the purpose of sexual gratification. "If appropriately limited, however, this testimony would not include [the other victim's] testimony concerning the remainder of her father's alleged sexual acts because the prejudicial value of the additional testimony would outweigh its probative value." Schaim, at 61. Since appellant in the case before us denied any touching at all, it is the general rule of inadmissibility of other acts set forth in Schaim which applies, not the limited exception carved out therein. We therefore cannot accept the state's contention that no possible prejudice to appellant resulted from the failure to oppose joinder, since all testimony from both victims would have been heard in both trials even had the matters not been joined.
 {¶ 67} The conclusion we reach in the present case, in assessing the effectiveness of trial counsel, is not that there was no potential risk for appellant from trying the cases together, but that there were concomitant advantages to going forward in a single proceeding, and that, ultimately, no actual prejudice to appellant can be shown based upon the outcome of the trial. As stated above, the possibility that one sister's lack of credibility might undermine the testimony of the other cannot be disregarded; in fact the jury found one sister not credible. Although this ultimately did not avoid conviction on the charges involving Casey, Melissa's lack of credibility could certainly have benefited appellant in the charges against Casey. Ultimately, the outcome of the trial obviated any possibility of prejudice to appellant; had appellant been convicted of charges involving both sisters, some prejudice could be argued, but the actual outcome in the present case simply does not support the proposition that one sister's less than credible testimony bolstered the jury's willingness to convict on charges involving the other sister. No ineffective assistance of trial counsel can be shown in this respect.
 {¶ 68} With respect to appellant's assertion that trial counsel failed to request a limiting instruction on the sisters' testimony, we first note that trial counsel did in fact obtain a limiting instruction cautioning the jury from using uncharged acts alleged with respect to Melissa to show a general propensity to commit acts of molestation. Moreover, we note that the decision not to request a limiting instruction can be a tactical one, based upon a desire not to draw further attention to the evidence. State v. Lawson (1992), 64 Ohio St.3d 336, 341. Most significantly, however, it is again the jury's split verdict which demonstrates that appellant did not suffer actual unfair prejudice. On this basis, we find that trial counsel was not ineffective on the basis of the limiting instruction given.
 {¶ 69} Turning to appellant's assertion that trial counsel was ineffective for failing to retain an expert to review police questioning of Melissa and Casey prior to trial, again we find that any prejudice is excessively speculative for the reasons set forth in our discussion of defense counsel's decision not to seek an expert prior to the sexual predator hearing. State v. Hartman (2001), 93 Ohio St.3d 274, 299 (failure to call expert was excessively speculative and could not be properly raised upon appeal.)
 {¶ 70} With respect to appellant's assertion that trial counsel was ineffective for failing to have a potentially biased juror removed from the panel, we find that the record does not support any indication of prejudice. Prior to opening statements, juror L.J. disclosed to the court a fact which had not been discussed during voir dire: her former daughter-in-law suffered from severe mental illness which L.J. speculated might have been triggered by the molestation of the ex-daughter-in-law's child by the child's natural father. L.J.'s son had not lived with the former daughter-in-law for ten years, the child was not the juror's natural granddaughter, and the juror did not know the perpetrator of the molestation. The juror explained the fact simply to comply with the court's instructions to reveal all possible influences in the jury's past experience. Upon questioning by the court, the juror said that she could be fair and impartial, was not personally connected with the incident of molestation in question, and did not have any personal bias, one way or the other, about whether her former daughter-in-law's illness had been caused by distress resulting from molestation of the child.
 {¶ 71} Because of the remoteness of the incident, and the lack of any evidence that the juror in question was biased, it is not apparent that there was any reason to remove the juror from the panel based upon her description of these events occurring on the periphery of her extended family. We find no prejudice to appellant from trial counsel's acquiescence in this juror remaining on the panel.
 {¶ 72} Finally, we turn to appellant's contention that trial counsel was ineffective for failure to object to the trial court's incomplete preliminary instruction on reasonable doubt. Proof beyond a reasonable doubt is correctly defined as "proof of such character that an ordinary person would be willing to rely and act upon it in the most important of his own affairs." R.C. 2901.05(D). The trial court's preliminary instruction to the jury omitted the words "and act." It is undisputed that the trial court gave the full and correct instruction when the case was given to the jury.
 {¶ 73} The difference in language is slight and, in the context of this case, without prejudicial effect upon appellant. The trial court's correct jury instruction at the close of the case further diminishes the already slim possibility that the jury decided the case upon an incorrect definition of reasonable doubt. No prejudice to appellant can be shown from the misstated preliminary instruction on this question.
 {¶ 74} In summary, appellant has failed to establish either the trial counsel's conduct in any of the cited areas fell below prevailing professional norms, or that the outcome of the case, absent any of the alleged errors by trial counsel, would have been different. In the absence of a showing of ineffective assistance of counsel at trial, appellant's fifth assignment of error is overruled.
 {¶ 75} Based upon the foregoing, appellant's first, second, third, fourth and fifth assignments of error are overruled, and the judgment of conviction and sentence entered by the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
TYACK and BROWN, JJ., concur.