THE STATE OF OHIO, APPELLANT, *v.* CROTTS, APPELLEE.

[Cite as *State v. Crotts,* 104 Ohio St.3d 432, 2004-Ohio-6550.]

(No. 2003–1161—Submitted September 15, 2004—Decided December 15, 2004.)

O'CONNOR, J.

{¶ 1} Steven Crotts was arrested on January 16, 1999, following a police investigation of an alleged sexual assault occurring at his home. The victim, 12-year-old "J," alleged that he and his twin brother, "B," had shoveled snow at Crotts's residence on January 15. After Crotts paid the boys for shoveling snow, they attended an Awana church event with him. Following the event, they rented videos to watch at Crotts's home. The twins intended to spend the night there. After preparing dinner for the boys, Crotts fixed a plate for J, while B fixed his own plate. While the boys watched videos over dinner, Crotts also brought a glass of root beer into the living room for J to drink, while B poured his own. J and B reported that Crotts offered them a white pill, later determined to be melatonin, telling them it would help them sleep better and live longer. Both boys refused to ingest the pills, instead putting the pills in their pockets.

{¶ 2} B testified that J fell asleep unusually early that night. J recalled feeling woozy and falling asleep on the couch. He recalled being carried up the stairs at some point; he remembered seeing two white hands, Crotts's face, and a pair of glasses. J did not recall protesting. J believed that Crotts had somehow managed to slip him the white pill to make him drowsy.

{¶ 3} J woke up the next morning in Crotts's bedroom on top of Crotts. J was naked except for his socks. Crotts was also naked. J stated that when he awakened, he was facing the appellant in a "riding position" and felt his penis rubbing against Crotts's penis. He felt Crotts's hands on his buttocks, moving him up and down. J also noted that both his penis and Crotts's penis were erect and lubricated with oil. J yelled at Crotts to get off him and attempted to climb off the bed. Crotts smiled and said to him, "I know what you're doing," and grabbed J by the wrists. When J finally managed to get off the bed, he felt a wet substance in his pubic area. He put on his shorts and ran downstairs, where

he awakened his twin brother, yelling, "Steve was trying to rape me—he was trying to do something to me." J called the police.

{¶ 4} The twins' older brother, 16-year-old P, worked for and resided with Crotts. P never paid rent to Crotts; while he was living there, Crotts took pictures of P and his friend in risqué poses that Crotts printed with the captions "C'mon 'n' Lick Me" and "Sisters for Life." P testified that he and a male friend returned to Crotts's home in the early morning hours of January 16, 1999 and saw his younger brother, B, sleeping on the couch alone. P and his friend went upstairs to go to sleep. They were awakened several hours later by sounds of a commotion in the house. Two officers came into his bedroom with their guns drawn. P heard J saying, "Not in there, in here," and heard the shower running. P remained in his room until after Crotts was taken to the police station. He and his friend later left the residence at the order of the police.

{¶ 5} J and B were taken to the police station, where they were interviewed. J was then taken to the hospital and a rape-kit examination was performed. The examining doctor, Cary Scott, noted the presence of an emollient on J's body, which may have been olive oil. Dr. Scott noted no signs of trauma or physical evidence of molestation on the victim; however, Dr. Scott also noted that a lack of findings was not uncommon if a lubricant had been used or there was no forced penetration.

{¶ 6} The Bureau of Criminal Identification and Investigation ("BCI") performed a chemical analysis of the white pill that B had turned over to police. Forensic scientist Jeffrey Houser determined that the white pill was melatonin, a dietary supplement. No tests were performed to determine whether melatonin had been ingested by J. The BCI report also contained the results of tests performed to find physical evidence on J's shorts. The report indicated the presence of sperm from J but found no evidence of sperm or DNA from Crotts.

{¶ 7} Crotts denied the allegations made against him. He asserted that he was awakened on the morning of January 16, 1999 by someone throwing shoes at him. He ignored it and tried to go back to sleep, but one of the twins—he couldn't tell which one—appeared at his bedside with a bottle of oil in his hand, poised to pour the oil on him. Crotts became angry and pushed the boy against the wall. The boy spilled the oil against the wall, further angering Crotts, and the boy ran out, still carrying the bottle. A few minutes later, one of the twins came into the room, tried to pull the sheet off Crotts, and again attempted to pour olive oil on him. Crotts grabbed the boy's arm, twisted it, and the boy fell to the ground. Crotts was naked at the time. He told the boy to give him the oil or he was going to "beat [him] like [his] father does." The boy ran downstairs, yelling that he was going to sue Crotts. Crotts stayed in bed a little longer and then got up

and took a shower. The next thing he knew, he heard police telling him to get out of the shower.

{¶ 8} Crotts was convicted of one count of kidnapping with a sexual-motivation specification and two counts of gross sexual imposition, with each of the latter two counts carrying a specification that the victim was under 13 years of age. Crotts was adjudicated to be a sexual predator.

{¶ 9} The appellate court reversed the convictions because it found certain testimony and evidence to be inadmissible "other acts" evidence. The evidence found offensive by the appellate court included (1) victim testimony that Crotts had photographs of nude juveniles and adults on his computer, (2) testimony that Crotts took the victim and his brother to an "all gay" church, (3) testimony that Crotts attended a second church catering to the gay community, (4) a photograph of P and a male friend, which Crotts had captioned "Sisters for Life," (5) a second photograph, captioned "C'mon 'n' Lick Me!," of the same friend unclothed, partially covered by a sheet, and (6) testimony from P that he had "personal experiences" with Crotts that "would make [him] believe he's guilty * * *."

{¶ 10} We will begin by examining the admissibility of the first five items of evidence. The opinion testimony will be addressed separately. The state argues that the evidence listed in (1) through (5) above was properly admitted under Evid.R. 404(B) to demonstrate Crotts's intent, motive, and plan. The appellate court found that this evidence could not be used to show Crotts's intent because "Crotts denied the acts, not their alleged purpose." The court reasoned, "[I]f the State could prove the acts occurred as alleged, Crotts's intent would not be in dispute." The court also stated that the above-mentioned evidence, though purportedly offered to show intent, plan, or motive, actually goes solely to Crotts's propensity to commit the crime and was admitted in violation of Evid.R. 404(B).

{¶ 11} The appellate court dismissed the state's argument that the evidence shows Crotts's plan to desensitize the victim and his brothers to pedophilia in order to facilitate his sexual advances, opining, "The inference of a plan can be made only if one first infers that Crotts is homosexual, that he, therefore, is attracted to minors, and that he employed boys in his businesses as a means of gaining access to them. Not only are these inferences invalid, they can only be made after one has made the forbidden inference of propensity." (Footnote omitted.)

{¶ 12} We must note that the modern understanding of pedophilia is that it exists wholly independently from homosexuality. The existence or absence of one neither establishes nor disproves the other. "The belief that homosexuals are attracted to prepubescent children is a baseless stereotype." *State v. Bates* (Minn.App.1993), 507 N.W.2d 847, 852. Thus, evidence of homosexuality is not

relevant to establish pedophilia. Id. We are forced to state the obvious because of the reckless and bald assertion by the appellate court that the prosecutor argued, and the jury believed, that because Crotts is homosexual, he therefore is also a pedophile. Fortunately, the appellate court is mistaken. Neither the prosecutor nor the trial judge was that obtuse. In fact, on the eve of trial, the trial judge warned the prosecution to be very careful in its treatment of the issue:

{¶ 13} "[T]he State is to be very clear that [Crotts's] homosexuality cannot be used in a manner of prejudice against the defendant.

{¶ 14} "* * * The Court may even on its own, step in if the Court feels that way and I will be watching for that.

{¶ 15} "* * * I do want to severely caution [the prosecution] that this Court is not going to have homosexuality as the focus of the trial.

{¶ 16} "I'm not going to allow the jurors to cast their verdict based on homosexuality."

{¶ 17} The prosecutor did not argue that Crotts abused J because Crotts is homosexual. Rather, the prosecutor argued that over the course of time, Crotts attempted to condition J and his brothers to accept pedophilia as appropriate conduct. The state argues that the controverted evidence was used to support this legitimate argument. The question we must answer is whether the appellate court erred when it ruled that the trial court had abused its discretion by admitting the evidence to be used for this purpose.

{¶ 18} Generally, extrinsic acts may not be used to suggest that the accused has the propensity to act in a certain manner. Evid.R. 404(B); *State v. Smith* (1990), 49 Ohio St.3d 137, 140, 551 N.E.2d 190. However, there are exceptions. Evid.R. 404(B) allows such evidence where it is offered to show "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Even more relevant is R.C. 2945.59, which provides, "In any criminal case in which the defendant's motive or intent * * * is material, *any acts of the defendant* which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant." (Emphasis added.) The defendant's motive in this case is absolutely material, as he was charged with kidnapping with a sexual-motivation specification.

{¶ 19} Neither R.C. 2945.59 nor Evid.R. 404(B) "requires that the other act be 'like' or 'similar' to the crime charged, as long as the prior act tends to show one of the enumerated factors." *State v. Shedrick* (1991), 61 Ohio St.3d 331, 337, 574 N.E.2d 1065. The appellate court stated that proof of Crotts's plan is immaterial

if the state establishes that the defendant committed the acts charged. While this statement is tautologically true, the standard for admitting other-acts evidence is not whether the evidence is necessary to prove an element of the offense. Rather, the issue is whether the evidence "tend[s] to show" motive, plan, or intent.

{¶ 20} The appellate court's assertion that the state did not need to prove Crotts's motive, intent, scheme or plan to prove that he committed the charged offenses was misguided in several ways. First, it is not true in this case. In order to prove the sexual-motivation specification to the kidnapping count, the state needed to prove motivation. See R.C. 2971.01(J) and (K). Second, even if the statement were true, it does not follow that evidence establishing motive, intent, scheme, or plan is immaterial. Such evidence is always material because it tends to show why one version of events should be believed over another.

{¶ 21} In this case, the trial court aptly limited the evidence to protect the defendant. The trial court excluded from evidence any testimony regarding whether Crotts is homosexual or has AIDS. It also excluded testimony that Crotts walked around his house naked in the presence of juveniles and had a sexual relationship with P. The trial court excluded evidence that Crotts exposed J to pornography and sexual devices. The court severed this case from charges that Crotts sexually abused J's twin brother. The trial court also sustained an objection when the prosecutor asked P the meaning of "Sisters for Life." Likewise, the court prevented P from testifying that he witnessed Crotts "lie[ ] about his health" to a sexual partner, in the apparent belief that it would lead the jury to speculate about Crotts's HIV status. The photos of P and his friend were admitted only to show that Crotts was indeed sexually attracted to young boys. Even so, the court carefully limited this evidence that Crotts was attracted to minors out of concern that cumulative evidence of this nature would be prejudicial. J's testimony that he viewed child pornography on Crotts's computer is consistent with the state's desensitization theory of the case. The trial court's careful stewardship of this sensitive evidence demonstrated a skillful application of the evidentiary rules and fell well within her realm of discretion.

{¶ 22} The remaining controverted evidence took the form of witness testimony, which by its very nature cannot always be curtailed in advance. Two of the statements described Crotts's introduction of the boys to what one of them called an "all gay" church and to a second church that was characterized as gay-friendly. The state offered this testimony as an element of its theory that Crotts exposed J to sex through photos, movies, casual nudity, and environment to desensitize him to man-boy sexual relationships. One of the environmental factors happened to be exposure to homosexuality. The trial court recognized that homosexuality does not equate with pedophilia. However, it also found that

the state's theory was not unreasonable. Thus, the jury was permitted to weigh this evidence. Crotts argues that this statement prejudiced him by implying that he is homosexual, leading the jury to convict him based upon his homosexuality.

{¶ 23} As a legal term, "prejudice" is simply "[d]amage or detriment to one's legal rights or claims." Black's Law Dictionary (8th Ed.1999) 1218. Thus, it is fair to say that all relevant evidence is prejudicial. That is, evidence that tends to disprove a party's rendition of the facts necessarily harms that party's case. Accordingly, the rules of evidence do not attempt to bar all prejudicial evidence—to do so would make reaching any result extremely difficult. Rather, only evidence that is *unfairly* prejudicial is excludable.

{¶ 24} " 'Exclusion on the basis of unfair prejudice involves more than a balance of mere prejudice. If unfair prejudice simply meant prejudice, anything adverse to a litigant's case would be excludable under Rule 403. Emphasis must be placed on the word "unfair." Unfair prejudice is that quality of evidence which might result in an improper basis for a jury decision. Consequently, if the evidence arouses the jury's emotional sympathies, evokes a sense of horror, or appeals to an instinct to punish, the evidence may be unfairly prejudicial. Usually, although not always, unfairly prejudicial evidence appeals to the jury's emotions rather than intellect.' " *Oberlin v. Akron Gen. Med. Ctr.* (2001), 91 Ohio St.3d 169, 172, 743 N.E.2d 890, quoting Weissenberger's Ohio Evidence (2000) 85–87, Section 403.3.

{¶ 25} Because fairness is subjective, the determination whether evidence is unfairly prejudicial is left to the sound discretion of the trial court and will be overturned only if the discretion is abused. *State v. Robb* (2000), 88 Ohio St.3d 59, 68, 723 N.E.2d 1019. The unfairness that the appellate court found here apparently was the danger that the jury would presume that Crotts was guilty if it learned that he is homosexual. Although we would be reluctant to overturn this ruling had it been made by the trial court, the court of appeals failed to articulate why the trial court acted outside its discretion when it concluded that the limited references to "all gay" and gay-friendly churches was not prejudicial. The appellate court simply substituted its judgment for that of the trial court without demonstrating that the lower court abused its discretion.

{¶ 26} The trial court granted Crotts's motion to exclude evidence that he is homosexual. No direct evidence that Crotts is gay was admitted. Testimony that Crotts took the children to allegedly homosexual churches does not lead so inexorably to the conclusion that he is homosexual that admission of such testimony was an abuse of discretion. Theoretically, testimony that a heterosexual male took children to a homosexual church would be more supportive of the state's theory that it was done for the purpose of desensitizing J because a

straight male would have less reason to attend a gay church, and his motive for taking a child there would be that much more suspicious.

{¶ 27} The final controverted testimony was that P testified during redirect, "Well, I have had personal experiences with the defendant that would make me believe he's guilty, but I've also known my brothers all their lives and heard their lies, so it's kind of a lose/lose situation." In its opinion, the appellate court quoted only the first half of this statement. The qualification that follows the "but" minimizes the effect of the first clause. It is not clear to us why the sentence, taken as a whole, should be excluded. Lay witness opinion testimony is permitted where it is "(1) rationally based on the perception of the witness and (2) helpful to a clear understanding of his testimony or the determination of a fact in issue." Evid.R. 701. Opinion testimony is not excludable "solely because it embraces an ultimate issue to be decided by the trier of fact." Evid.R. 704. This case was ultimately one of credibility. J told one version of events, and Crotts told another. Testimony expressing an opinion on whose version is more likely to be true would certainly aid the jury in reaching its conclusion. "The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but * * * the evidence may refer only to character for truthfulness or untruthfulness * * *." Evid.R. 608(A). P's testimony was directed to Crotts's character for untruthfulness. And since P portrayed his brothers as habitual liars virtually in the same breath, Crotts's claims of unfair prejudice must lose what little force they otherwise might have had.

{¶ 28} The court of appeals erred in reversing the conviction, and its judgment is reversed. The cause is remanded to the appellate court to address the assignments of error it found to be moot under App.R. 12(A)(1)(c).

Judgment reversed
and cause remanded.

Moyer, C.J., Resnick, Lundberg Stratton and O'Donnell, JJ., concur.

Pfeifer, J., concurs in judgment only.

F.E. Sweeney, J., dissents and would dismiss the appeal as improvidently allowed.

---

William D. Mason, Cuyahoga County Prosecuting Attorney, Peter Corrigan, Faris Asad, Chrisana C. Blanco, and Amy E. Venesile, Assistant Prosecuting Attorneys, for appellant.

Paul Mancino Jr., for appellee.