[Cite as *State v. Short*, 2015-Ohio-3183.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. John W. Wise, J. |
| Plaintiff-Appellant | : | Hon. Patricia A. Delaney, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 14CA67 |
| CHRISTOPHER L. SHORT | : |  |
|  | : |  |
| Defendant-Appellee | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Criminal appeal from the Richland County
                              Court of Common Pleas, Case No.
                              2012CR0429 R

JUDGMENT:                     Affirmed

DATE OF JUDGMENT ENTRY:       August 6, 2015

APPEARANCES:

For Plaintiff-Appellee                For Defendant-Appellant

JOHN NIEFT                            RANDALL FRY
38 South Park Street                  10 West Newlon Place
Mansfield, OH 44902                   Mansfield, OH  44902

*Gwin, P.J.*

{¶1} Defendant-appellant Christopher Short ["Short"] appeals from his convictions and sentences after a jury trial in the Richland County Court of Common Pleas on one count of rape and four counts of domestic violence.

*FACTS AND PROCEDURAL HISTORY*

**INTRODUCTION.**

{¶2} Short was indicted in two cases. Upon motion of the state, which the defense did not oppose, on July 3, 2014 the Court ordered in the interest of Judicial Economy, Case No; 2012-CR-0429 and Case No: 2014-CR-0200 be joined and tried together.

{¶3} On August 13, 2012, Short, was indicted by the Richland County Grand Jury for his criminal acts against A.S. on July 1, 2012. In Case No: 2012-CR-0429, Short was charged on two counts. The first count is Rape a felony of the second degree pursuant to R.C. 2907.02(A)(2). In Count 2, Short was charged with Domestic Violence, a felony of the fourth degree pursuant to R. C. 2919.25(A)(D)(3). The victim in this case was A. S. The jury found Short guilty on both counts.

{¶4} On April 4, 2014, Short was indicted by the Richland County Grand Jury for criminal acts against B.S. In Case No: 2014-CR-0200, Short was charged with seven counts of Domestic Violence.

{¶5} For his acts on January 1 to January 31, 2013, Short was indicted in Count 1 or Domestic Violence in violation of R.C. 2919.25(A), with two prior Domestic Violence convictions, a felony of the third degree. For his acts between June 1 and June 30, 2013, Short was indicted in Count 2 with Domestic Violence in violation of R.C.

2919.25(A), with two prior Domestic Violence convictions, a felony of the third degree. For his acts on March 2, 2014, Short was indicted with three counts, Counts 3, 4, and 5 with Domestic Violence in violation of R.C. 2919.25(A), with two prior Domestic Violence convictions, felonies of the third degree. Counts 6 and 7 Short was indicted with Domestic Violence Threats in violation of R.C. 2919.25(C), with two prior offenses, misdemeanors of the first degree. In Counts 8 and 9 Short was indicted with Rape in violation of R.C. 2907.02(02), felonies of the first degree. In Count 10 Short was indicted for Abduction in violation of R.C. 2905.02(A)(2), a felony of the third degree.

{¶6} The jury found Short "Not Guilty" on Counts 1, 2, 3, and 4 all Domestic Violence, felonies of the third degree. The jury found Short "Guilty" on Count 5, Domestic Violence, a felony of the third degree. On Count 6, the jury found the Short "Guilty" of Domestic Violence, a misdemeanor of the first degree. On Count 7, the jury found Short "Guilty" of Domestic Violence a misdemeanor of the first degree. The jury found Short "Not Guilty" on Counts 8 and 9, both counts being Rape, a felony of the first degree. The jury found Short "Not Guilty" on Count 10, Abduction, a felony of the third degree

{¶7} The trial court sentenced Short on July 15, 2014. He was found to be a tier III sex offender and ordered to serve a total of 13.5 years of incarceration.

### **CASE NO. 2012-CR-0429 – JULY 1, 2012 – A.S.**

{¶8} Short was married to A.S. in 2008. In February 2010, Short had a domestic violence incident with A.S. Short eventually pleaded guilty to this as a misdemeanor domestic violence.

{¶9} During 2009 and 2010, B.S. worked with Short and A.S. at School Specialty, a factory making school supplies. B.S. was friends with the couple during her employment there. However, they grew apart when Short asked B.S. for nude photos one night during drinking. Shortly after that, Short and B.S. were laid off and A.S. took another job.

{¶10} In May of 2012, Short found B.S. on Facebook and contacted her. Things developed and they began to have an extramarital affair. This affair was discovered by A.S. Short and A.S. separated in mid-June. The two began sharing the house on alternating days. One night, A.S. would be home at night with their daughter, the next night A.S. would leave and Short would be home with their daughter. During this period, Short continued his affair with B.S.

{¶11} On June 30, 2012, Short and B.S. devised a plan to see if A.S. had B.S.'s car keyed. Short planned to text A.S. and eventually meet with her and convince A.S. that he had broken up with B.S. After that, Short would attempt to get A.S. to admit to having someone key B.S.'s vehicle.

{¶12} On July 1, 2012, Short texted A.S. asking to come to the house. A.S. told him not to come to their home. Nonetheless, after A.S. had put their child to bed, Short arrived knocking at the back glass door. A.S. opened the door and spoke to Short. She found him to be drunk but in a good mood, so she let him in to talk. Short stated that he had broken up with B.S. and wanted to get back together with A.S. Short then called B.S. and purported to break up with B.S. in front of A.S. A.S. took the phone from Short and yelled at B.S. that she had succeeded in keeping her husband.

{¶13} After hanging up the phone, A.S. told Short that she was not back with him and she was not going to have sex with him. A.S. merely wanted to hurt B.S. and wanted Short to choose her; she had no interest in patching up her relationship with Short.

{¶14} Short came over to the couch A.S. was sitting on and told her they would have sex. A.S. refused and Short yanked off A.S.'s pajama pants and began to stick fingers in her vagina. A.S. began to kick Short and tried to push him off, but he held her down. Short then attempted to perform oral sex on A.S., but she pulled away and fell to the floor. A.S. attempted to stand, but Short was behind her and put his arms around her neck, choking her. A.S. began to black out and heard a popping sound in her neck. Short stated that he would kill A.S. if she did not have sex with him. A.S. then stopped fighting back, but still told Short to stop. Short forced A.S. to perform oral sex on him, stated that he is raping A.S. and will ejaculate in her mouth to not leave any evidence. A.S. was gagging and could not breathe. Short then vaginally penetrated A.S.

{¶15} Short wanted to go to the bedroom and complete copulation. A.S. initially denied but agreed to go for fear of her life. On the way there, A.S. asked to get a glass of water from the kitchen. When A.S. had gotten far enough away from Short, she fled out the sliding glass doors in only a shirt.

{¶16} The next-door neighbor was not home, so A.S. fled to the next neighbor over, David Willis. A.S. knocked on the door until Mr. Willis answered. A.S. was hysterical and wearing nothing but a grey shirt. A.S.'s hair was messed up, she was crying, and her face was red. A.S. requested that Mr. Willis call 9-1-1 because Short had just hit her, choked her, and potentially raped her. He did so and gave her

sweatpants to wear. A.S. reported that she was abused and raped on the 9-1-1 call. During this time, Short got into his vehicle and fled.

{¶17} A.S. went back to her house accompanied by Mr. Willis. Officers Jeffrey Gillis and Larry Schacherer from the Mansfield Police Department arrived on the scene within 10 minutes. They took statements from A.S. and Mr. Willis. They collected a domestic violence packet from A.S., which included an affidavit where A.S. told them that Short choked her and raped her. They did not notice any visible injuries during this interview.

{¶18} A.S. reported to SANE Nurse Elaine Siewert similar information that she had provided to the police officers. A SANE exam was performed and Nurse Siewert noted injuries to A.S.'s neck and back. She further noted A.S. reported pain in her neck, back, left wrist, and left cheek. Redness was seen in and around the vagina, which showed blunt force trauma in that area. DNA swabs were collected from the vaginal region of A.S. There were no bruises noted at the time. Officer Gillis took photographs of the injuries of A.S. at the hospital.

{¶19} Short was arrested by Lexington Police Department in the home of his mother that night. When being transported to the jail Short commented to Officer Schacherer that, "I [Short] read where a lot of people have been charged with rape but nobody ever gets convicted with it." Short initially told officers that he was not at A.S.'s house that day, then he changed his story to having been there earlier in the day and no sex occurred. Short then he changed his story to he and A.S. had consensual sex at around 4:00 p.m. Short's injuries were photographed by Office Schacherer. Short had

bite marks on his arm. Short explained these marks as rough play with his friends at the lake. When Short ultimately testified at trial, he stated that all of these were lies.

**{¶20}** The following day, A.S. texted B.S. In these texts, A.S. told B.S. what had occurred, namely that the Short had choked her until she blacked out and forced her to have sex with him with threats of death.

**{¶21}** The DNA collected for the SANE exam was analyzed. There was no semen present on the oral, anal, or vaginal swab. However, on the swab of A.S.'s right breast, there was DNA of Short and A.S.

**{¶22}** Short was released on bond and began living at his mother's house in Lexington, Ohio. He continued to see B.S. Short was divorced from A.S. and he became engaged to B.S. on December 4, 2012.

### CASE NO. 2014-CR-0200 – JANUARY 2013 THROUGH MARCH 2014 – B.S.

**{¶23}** In January 2013, Short became violent with B.S. during a sexual encounter in his vehicle. B.S. was performing oral sex on Short when he struck her in the back of her head and he grabbed her hair very roughly, stating that she would be bald when he was done with her. He eventually threw her glasses out of the vehicle. B.S. did not originally report this incident because she loved Short at the time and believed him when he apologized later.

**{¶24}** In June 2013, Short again became abusive with B.S. Short requested sex from B.S. and she declined. Short took her glasses and started hitting her. B.S. ran to the kitchen and she grabbed what she thought was a knife, but was really an icing spatula. Short came at her, took the spatula, and began hitting her on the top of the head with a closed fist. Short's mother then came downstairs and told Short to stop.

B.S. fled to a gas station. B.S. did not report this incident because of Short's pending charge involving A.S.

{¶25} B.S. testified that the abusive relationship with Short grew over time and she became more and more afraid of him. She stated that she made three statements over the pendency of the 2012 case to attempt to assist Short in his defense. Each of these statements were at Short's direction and were made to appease him. These statements were largely based solely on what Short told B.S. and were untrue as far as she knew.

{¶26} On March 1, 2014, B.S. was driving to Wal-Mart with Short. Short became angry with B.S., took out the car keys, and began sawing at her fingers with the keys. Later that night, while B.S. was staying the night with Short, Short wanted sex from B.S. and she refused. Short, grabbed her stomach and twisted it painfully. Both then fell asleep for a short time. About two hours later, Short awakened B.S. demanding sex. B.S. again refused and Short wrenched B.S.'s legs apart and stated she was his wife and he could have sex with her whether she wanted to or not. B.S. began crying but decided to allow the intercourse. Short went from vaginal sex to penetrating B.S. anally. When he did so, B.S. screamed out in pain. Short covered B.S.'s mouth and began choking her to gag her screams so his mother would not hear. Short told B.S. that she was dead when he was choking her. Short eventually ejaculated in B.S.'s anus and then went to sleep. B.S. lay awake crying, but eventually fell asleep.

{¶27} The next morning, B.S. wanted to leave but could not find a time to escape. Short requested sex from B.S. again, which she again denied. Short then proceeded to hit her on the hip five to seven times, causing injuries to B.S. Short claimed he would

stop hitting B.S. when she is right. Short then went to the bathroom. B.S. took the opportunity to flee the house. She initially went to the Lexington Police Department, but decided not to wait to be helped for fear that Short would find her, so she left.

{¶28} Short proceeded over the next two days to text and call B.S. He was begging B.S. to talk to him and that he was very sorry. B.S. met with Short in public. She spoke to Short from her vehicle with the doors locked and the window cracked. B.S. recorded the conversation with her phone, which was played for the jury. That conversation had Short apologize profusely and guaranteeing that he will change.

{¶29} On Monday morning, B.S. went to get a civil protection order, which she secured by noon. B.S. then went to Lexington Police Station, met with officers, and reported the recent incident. B.S. saw a doctor because her organs were tender, and he noted some injuries. B.S. was not informed to do a SANE exam until later, which she completed that Wednesday.

{¶30} At the SANE exam, some bruising was noted and recorded. There was diffuse redness on her cervical os and scant bloody drainage noted. Following the SANE exam, B.S. met with another Lexington Police Officer to report the rape, as they had not noticed she complained of both domestic violence and rape previously.

### SHORT TESTIFIES AT TRIAL.

{¶31} Short testified in this case. He admitted to both of his prior domestic violence convictions in 2004 and 2010. Short claimed, regarding the 2012 incident with A.S., that A.S. let him in the front door and that they had consensual sex after the phone call with B.S. During the sex, when they were going to the bedroom, A.S. went to the glass door, smiled at him mischievously, and left. Smith then drove to his mother's

house. Short denied the allegations of domestic violence and rape that night. Short did state that he was scared when he was arrested that night, so he lied in his statement to officers.

{¶32} Short denied the allegations of physical and sexual abuse against B.S. Short denied that he and B.S. had sex the night of March 1 to March 2, 2014. Short stated that she smacked B.S.'s thigh playfully on March 2, 2014.

{¶33} Generally, Short testified at trial that both A.S. and B.S. injured themselves so that they could create false charges of domestic violence and rape against him.

**SENTENCE.**

{¶34} On July 15, 2014, Short was sentenced in Case No: 2012-CR-0429, to the Ohio State prison system on Count 1 for a mandatory nine years and Count 2, eighteen months. The trial court ordered the sentences to be served consecutive to each other and also consecutive to his sentence in Case No. 2014-CR-0200. Short was also found to be a tier three sex offender.

{¶35} In Case No. 2014-CR-0200, Short was sentenced to the Ohio State prison system on Count 5 for three years, and on Count 6 for 6 months in the Richland County Jail, the Court merged Count 7 with Count 6.

{¶36} The Court in the Sentencing Entry shows that Counts 5 and 6 are to run concurrent to each other. Count 5 is to run consecutively with Case No: 2012-CR-0429 for a total sentence of thirteen and one-half years in prison. This Sentencing includes three years of mandatory post release control.

*Assignment of Error*

{¶37} Short raises one assignment of error,

**{¶38}** "I. THE APPELLANT WAS DEPRIVED OF HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL AS THE TRIAL COUNSEL DID NOT OBJECT TO THE MOTION OF JOINDER FILED BY THE APPELLEE."

*Analysis*

**{¶39}** In his sole assignment of error, Short argues that his trial counsel was ineffective for failing to object to the state's motion for joinder of Case No. 2012-CR-0429 involving A.S. that had occurred in 2012 and Case No. 2014-CR-0200 that involved B.S. and had occurred in 2013-2014.

**{¶40}** A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. *Lockhart v. Fretwell*, 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180(1993); *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674(1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373(1989).

**{¶41}** In order to warrant a finding that trial counsel was ineffective, the petitioner must meet both the deficient performance and prejudice prongs of *Strickland* and *Bradley. Knowles v. Mirzayance*, 556 U.S. 111, 129 S.Ct. 1411, 1419, 173 L.Ed.2d 251(2009).

**{¶42}** Recently, the United States Supreme Court discussed the prejudice prong of the *Strickland* test,

> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the

result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S.Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693, 104 S.Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., at 687, 104 S.Ct. 2052.

"Surmounting Strickland's high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. ——, ——, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284 (2010). An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S., at 689–690, 104 S.Ct. 2052. Even under de novo review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." Id., at 689, 104 S.Ct. 2052; *see also Bell v. Cone*, 535 U.S. 685, 702, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). The question is whether an attorney's

representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S., at 690, 104 S.Ct. 2052.

*Harrington v. Richter,* __U.S.__, 131 S.Ct. 770, 777-778, 178 L.Ed.2d 624(2011).

{¶43} In cases involving a failure to make a motion on behalf of the defendant or oppose a motion by the state, a defendant is required to: (1) show that the motion or opposition thereto was meritorious, and (2) show that there was a reasonable probability that the verdict would have been different had the motion been made or opposed. *State v. Santana*, 90 Ohio St.3d 513, 739 N.E.2d 798(2001); *State v. Lott*, 51 Ohio St.3d 160, 555 N.E.2d 293(1990).

### *Joinder.*

{¶44} Joinder is appropriate where the evidence is interlocking and the jury is capable of segregating the proof required for each offense. *State v. Czajka*, 101 Ohio App.3d 564, 577-578, 656 N.E.2d 9 (8th Dist. 1995). Nonetheless, if it appears that a criminal defendant would be prejudiced by such joinder, then the trial court is required to order separate trials. Crim.R. 14.

{¶45} When a defendant claims that he or she was prejudiced by the joinder of multiple offenses, the court must determine (1) whether evidence of the other crimes would be admissible even if the counts were severed; and (2) if not, whether the evidence of each crime is simple and distinct. *State v. Schaim*, 65 Ohio St.3d 51, 59, 600 N.E.2d 661(1992), *citing State v. Hamblin*, 37 Ohio St.3d 153, 158-159, 524 N.E.2d 476(1988) *and Drew v. United States*, 331 F.2d 85(D.C.Cir. 1964). "If the evidence of other crimes would be admissible at separate trials, any 'prejudice that might result from

the jury's hearing the evidence of the other crime in a joint trial would be no different from that possible in separate trials,' and a court need not inquire further." *Schaim, supra, quoting Drew v. United States*, 331 F.2d at 90.

{¶46} In the case at bar, the state argues the evidence of each offense would have been admissible at separate trials pursuant to Evid.R. 404(B). Accordingly, we must determine the extent to which evidence of each of these crimes would be admissible in other trials if the counts were severed.

### Other Acts.

{¶47} In discussing the dangers associated with admitting other acts evidence in a case where the offenses included several counts of rape and gross sexual imposition, the *Schaim* court stated:

The admissibility of other acts evidence is carefully limited because of the substantial danger that the jury will convict the defendant solely because it assumes that the defendant has a propensity to commit criminal acts, or deserves punishment regardless of whether he or she committed the crime charged in the indictment. * * * This danger is particularly high when the other acts are very similar to the charged offense, or of an inflammatory nature, as is certainly true in this case. The legislature has recognized the problems raised by the admission of other acts evidence in prosecutions for sexual offenses, and has carefully limited the circumstances in which evidence of the defendant's other sexual activity is admissible. The forcible rape statute and the gross sexual imposition statute both contain subsections that address the

admissibility of evidence of other sexual activity by either the victim or the

defendant. * * *

65 Ohio St.3d at 59-60, 600 N.E.2d 661.

{¶48} The legislature has recognized the problems raised by the admission of other acts evidence in prosecutions for sexual offenses, and has carefully limited the circumstances in which evidence of the defendant's other sexual activity is admissible. The rape statute and the gross sexual imposition statute both contain subsections that address the admissibility of evidence of other sexual activity by either the victim or the defendant. *Schaim, supra.* (Footnotes omitted). Because of the severe social stigma attached to crimes of sexual assault and child molestation, evidence of these past acts poses a higher risk, on the whole, of influencing the jury to punish the defendant for the similar act rather than the charged act. Accordingly, the state may not "parade past the jury a litany of potentially prejudicial similar acts that have been established or connected to the defendant only by unsubstantiated innuendo." *Huddleston v. United States*, 485 U.S. 681, 689, 108 S.Ct. 1496, 99 L.Ed.2d 771(1988).

{¶49} Evidence of other acts is admissible if (1) there is substantial proof that the alleged other acts were committed by the defendant, and (2) the evidence tends to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *State v. Carter*, 26 Ohio St.2d 79, 83, 269 N.E.2d 115, 117(1971); *State v. Lowe*, 69 Ohio St.3d 527, 530, 1994-Ohio-345, 634 N.E.2d 616, 619. (Citing *State v. Broom*, 40 Ohio St.3d 277, 282-283, 533 N.E.2d 682, 690-691(1988); Evid.R. 404(B); R.C. 2945.59.

**{¶50}** Further, the prior act must not be too remote and must be closely related in nature, time, and place to the offense charged. *Schaim*, 65 Ohio St.3d at 60, 600 N.E.2d at 669. A prior act which is " * * * too distant in time or too removed in method or type has no permissible probative value." *State v. Snowden*, 49 Ohio App.2d 7, 10, 359 N.E.2d 87, 91(1st Dist. 1976); *State v. Burson*, 38 Ohio St.2d 157, 159, 67 O.O.2d 174, 175, 311 N.E.2d 526, 529(1974).

**{¶51}** Whether Short committed a crime is the crux of the dispute. If a crime did in fact occur, no dispute exists that Short was the perpetrator. In other words, no dispute exists as to identity. As the identity of the person who raped and abused A.S. and B.S. was not an issue at trial, the other acts are not properly admitted to prove the Short's scheme, plan, or system in committing the crimes charged. See, *State v. Curry*, 43 Ohio St.2d 66, 330 N.E.2d 720(1975); *State v. Miley,* 5th Dist. Richland Nos. 2005-CA-67, 2006-CA-14, 2006-Ohio-4670, ¶73. However, the Supreme Court has subsequently limited this holding,

> Pursuant to Evid.R. 404(B), * * * evidence of other crimes, wrongs, or acts of an accused may be admissible to prove intent or plan, even if the identity of an accused or the immediate background of a crime is not at issue.

*State v. Williams*, 134 Ohio St.3d 521, 522, 2012-Ohio-5695, 983 N.E.2d 1278, 1280, ¶ 2 (2012).

**{¶52}** *Williams* gives us a framework within which to evaluate the other-acts evidence:

The first step is to consider whether the other acts evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Evid.R. 401. The next step is to consider whether evidence of the other crimes, wrongs, or acts is presented to prove the character of the accused in order to show activity in conformity therewith or whether the other acts evidence is presented for a legitimate purpose, such as those stated in Evid.R. 404(B). The third step is to consider whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice. See Evid.R. 403.

*State v. Williams*, 134 Ohio St.3d 521, 526, 2012-Ohio-5695, 983 N.E.2d 1278, 1283, ¶ 20 (2012).

**{¶53}** The circumstances surrounding each rape and each incident of domestic violence in this case are relevant in making it more likely Short had sex with an unwilling victim by using physical violence and or threats. The evidence pertaining to each offense does have the tendency to prove Short engaged in a similar plan or method of conduct with both victims and to prove his motive, intent, or plan. The immediate similarity between the charges in both cases is a request for sex that is denied, violence, threats of violence and forced sexual conduct. Both assaults have further similarities: Short held his hand over the victims' mouths, chocked them and later apologized to them.

**{¶54}** The third step in the analysis is whether the probative value of each incident is outweighed by the prejudice risked in its admission. Unfair prejudice is that

quality of evidence that might result in an improper basis for a jury decision. *State v. Crotts*, 104 Ohio St.3d 432, 2004-Ohio-6550, 820 N.E.2d 302 ¶ 24. Because fairness is subjective, the determination whether evidence is unfairly prejudicial is left to the sound discretion of the trial court and will be overturned only if the discretion is abused. Id., *citing State v. Robb,* 88 Ohio St.3d 59, 68, 723 N.E.2d 1019 (2000).

**{¶55}** We note the trial court gave a limiting instruction that each of the offenses charged in this case constitutes a separate and distinct matter and that the jury must consider each charge and the evidence applicable to each charge separately, and then state their finding as to each charge uninfluenced by your verdict as to any other charge We presume the jury followed those instructions. *See, Williams, supra*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, at ¶ 23, *citing State v. Garner*, 74 Ohio St.3d 49, 59, 656 N.E.2d 623 (1995) and *Pang v. Minch*, 53 Ohio St.3d 186, 195, 559 N.E.2d 1313 (1990). Indeed, in B.S.'s case, Case No  2014-CR-0200,  the jury found Short "Not Guiliy" on Counts 1, 2, 3, and 4 all Domestic Violence, felonies of the third degree; "Not Guilty" on Counts 8 and 9, both counts being Rape, a felony of the first degree. The jury further found Short "Not Guilty" on Count 10, Abduction, a felony of the third degree.

**{¶56}** Assuming,  arguendo,  that  the  evidence  did  not  fit  the  "other  acts" exception,  it  nevertheless  fits  the  second  prong  of  the  *Schaim*  test  which  requires  the evidence of the crime under each indictment to be simple and distinct. 65 Ohio St.3d at 59. In *State v. Decker*, 88 Ohio App.3d 544, 624 N.E.2d 350(1st Dist. 1993), the court found  that  the  evidence  was  simple  and  distinct.  The  evidence  achieved  these characteristics  in  part  because  the  crimes  involved  contained  different  victims  and

different witnesses, and therefore, the jury was able to segregate the facts that constituted each crime. *Decker*, 88 Ohio App.3d at 549.

**{¶57}** In this case, the prosecution introduced evidence of each distinct crime. Both A.S. and B.S. testified at length and in specific detail about how the abuse occurred, when it began, and how long it continued. The issues were clearly laid out for the jury, and the jury was instructed that each count and victim should be considered from its own evidence. As previously noted, the jury found Short "Not Guility" of seven counts in the case involving B.S.

**{¶58}** Thus, as in *Decker*, the evidence was simple and distinct because the facts surrounding each crime were capable of segregation.

**{¶59}** Accordingly, because Short was not able to demonstrate that he was prejudiced by the joinder of the cases, he cannot meet the first element of the *Schaim* test. Therefore, we do not need to address the remaining elements of the test.

**{¶60}** Given the facts *sub judice,* we find that counsel was not ineffective in failing to file a motion to sever the cases.

**{¶61}** Short's sole assignment of error is overruled.

{¶62} The judgment of the Richland County Court of Common Pleas is affirmed.

By Gwin, P.J.,

Wise, J., and

Delaney, J., concur