**[Cite as *State v. Ranes*, 2016-Ohio-448.]**

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## PUTNAM COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

    v.

DAVID RANES,

    DEFENDANT-APPELLANT.

CASE NO. 12-15-03

**O P I N I O N**

Appeal from Putnam County Common Pleas Court
Trial Court No. 2014 CR 63

**Judgment Affirmed**

**Date of Decision: February 8, 2016**

APPEARANCES:

    *F. Stephen Chamberlain* **for Appellant**

    *Todd C. Schroeder* **for Appellee**

**WILLAMOWSKI, J.**

{¶1} Defendant-appellant, David Ranes ("Ranes"), brings this appeal from the judgment of the Common Pleas Court of Putnam County, Ohio, which entered his conviction after a jury found him guilty of one count of engaging in a pattern of corrupt activity, a felony of the first degree in violation of R.C. 2923.32(A)(1); one count of illegal manufacture of methamphetamines, a felony of the second degree in violation of R.C. 2925.04(A) & (C)(3)(a); and one count of illegal assembly or possession of chemicals for the manufacture of drugs, a felony of the third degree in violation of R.C. 2925.041(A) & (C). Ranes alleges that the trial court erred in refusing to appoint new counsel for him on the morning of the trial and in allowing the State to introduce evidence of his prior conviction. He further contends that his trial counsel was ineffective. For the reasons that follow, we affirm the trial court's judgment.

### Factual and Procedural Background

{¶2} In the summer and fall of 2014, detectives of the Putnam County Sheriff's Office, Multi Area Narcotics Task Force, investigated a group of individuals for their involvement in illegal manufacture of methamphetamine. The investigation led to arrests of Ranes and multiple other individuals as co-conspirators. A search of a residence where Ranes had previously resided resulted in the discovery of precursors and other items used for the manufacture of methamphetamine, all of which were linked to Ranes. Additionally, records from

the national precursor log exchange (NPLEx) showed multiple purchases of pseudoephedrine made by Ranes and the co-conspirators. Pseudoephedrine is a precursor used in the manufacture of methamphetamine.

{¶3} Ranes was indicted on November 20, 2014. He pled not guilty and received appointed counsel, Attorney William Kluge ("Attorney Kluge"). Several of the co-conspirators agreed to testify against Ranes. Prior to trial Ranes filed a motion in limine, requesting an order "prohibiting the introduction of evidence of any kind about the pattern of corrupt activity, unless it is directly related to the conduct of [the] Defendant, David Ranes." (R. at 31.)

{¶4} On the morning of the trial, February 9, 2015, Ranes orally moved for substitution of counsel, complaining that he was not satisfied with Attorney Kluge's preparation for trial. (Tr. of Proceedings at 7, Feb. 9, 2015 ("Tr.").) Attorney Kluge indicated that he was prepared to withdraw if the trial court accepted Ranes's request for new counsel. (Tr. at 6-7.) He attested, however, that he was adequately prepared to try the case and to provide effective assistance of counsel to Ranes. (Tr. at 8-9.) The trial court denied Ranes's request for new counsel and the case proceeded to trial with Attorney Kluge as trial counsel.

{¶5} Before the presentation of the evidence, the trial court heard arguments with respect to the motion in limine. As a result of the hearing, the trial court excluded some of the evidence about Ranes's other criminal activity, but allowed the introduction of a 2009 conviction for illegal assembly or possession of

chemicals for the manufacture of drugs, for the limited purpose allowed under Evid.R. 404(B), with accompanying limiting instruction. (Tr. of Proceedings at 122, 124, Feb. 9, 2015 ("Tr.").)

{¶6} The jury found Ranes guilty on all three counts. (R. at 90.) After the trial, Ranes filed a pro se motion to set aside the verdict and set a new trial date. (R. at 93.) In his motion Ranes argued that his trial counsel was ineffective "[d]ue to his lack of preparation and time spent with defendant, his lack of knowledge of case and his lack of discretion in using key points brought up by defendant in cross examination of key witnesses." (*Id.*) The trial court overruled the motion. (R. at 96.) Ranes was subsequently sentenced to eleven years on count one, eight years on count two, and thirty-six months on count three, all to be served consecutively. (R. at 99.)

Ranes appeals raising three assignments of error for our review, as quoted below.

### *Assignments of Error*

ASSIGNMENT OF ERROR ONE: THE TRIAL COURT COMMITTED AN ERROR IN NOT GRANTING THE DEFENDANT'S ORAL PRO SE MOTION TO REMOVE TRIAL COUNSEL AND APPOINT SUBSTITUTE COUNSEL THE MORNING OF THE COMMENCEMENT OF THE TRIAL

ASSIGNMENT OF ERROR TWO: THE TRIAL COURT COMMITTED ERROR IN ALLOWING THE STATE TO INTRODUCE EVIDENCE OF A PRIOR CONVICTION TO BE USED IN THE STATE OF OHIO'S CASE IN CHIEF

ASSIGNMENT OF ERROR THREE: DEFENDANT'S TRIAL COUNSEL WAS INEFFECTIVE

*First Assignment of Error—Substitution of Counsel*

{¶7} Ranes alleges that the trial court erred when it denied his request for new counsel on the morning of the trial. He relies on the criminal defendant's right to counsel guaranteed by the United States Constitution and the Ohio Constitution. *See State v. Combs*, 3d Dist. Hancock No. 5-96-15, 1996 WL 518112, *1 (Sept. 12, 1996).

{¶8} We have previously recognized that although a criminal defendant has an absolute right to counsel, there is no "absolute right" to counsel of one's own choosing. *Id.*, citing *United States v. Iles*, 906 F.2d 1122, 1130 (6th Cir.1990), *and State v. Marinchek*, 9 Ohio App.3d 22, 23, 457 N.E.2d 1198 (9th Dist.1983). Therefore, an indigent defendant does not have the right to choose his counsel. *Thurston v. Maxwell*, 3 Ohio St.2d 92, 93, 209 N.E.2d 204 (1965). In situations where an issue of substitution of appointed counsel arises, an indigent defendant must demonstrate "good cause" to warrant the change. *Combs* at *1. We recognized that good cause for substitution of counsel might be "a conflict of interest, a complete breakdown in communication, or an irreconcilable conflict which leads to an apparently unjust verdict." *Id.* If the defendant demonstrates good cause, the trial court has a duty to inquire whether the dissatisfaction with counsel is justifiable and whether it requires substitution of counsel. *Id.*

> An inquiry into whether the substitution of counsel is warranted serves several important goals. This procedural protection not only aids in determining whether "good cause" has been shown, but serves to ease the defendant's distrust, to preserve the integrity of the trial process, and to foster confidence in the jury verdict.

*Illes* at 1131. In its inquiry the trial court must balance the defendant's preference as to his counsel's choice against "the court's interest in the integrity of the proceedings and the public's interest in the proper administration of justice." *United States v. Mays*, 69 F.3d 116, 121 (6th Cir.1995). "Attorneys cannot be shed at every stage of the proceeding so as to impede that orderly administration." *Marinchek* at 23-24.

{¶9} The decision on the defendant's request for substitution of counsel rests within the sound discretion of the trial court. *Combs* at *1; *N. Eagle, Inc. v. Kosas*, 8th Dist. Cuyahoga No. 92358, 2009-Ohio-4042, ¶ 32; *see also State v. Keenan*, 81 Ohio St.3d 133, 137, 1998-Ohio-459, 689 N.E.2d 929 (1998) (applying the same standard to the trial court's disqualification of counsel). Because abuse of discretion connotes more than an error in judgment, we will not substitute our judgment for that of the trial court. *Keenan* at 137, citing *State v. Adams,* 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980). Therefore, we will only reverse the trial court's decision if "the trial court's attitude [was] unreasonable, arbitrary, or unconscionable." *Id.* "A decision is unreasonable if there is no sound reasoning process that would support the decision." *State v. Britton*, 3d Dist. Marion No. 9-99-81, 2000-Ohio-1881, 2000 WL 765805, *4.

**{¶10}** In the instant case, Ranes complains that the trial court did not sufficiently inquire into his dissatisfaction with Attorney Kluge. Our review of the transcript does not support Ranes's contention. The transcript indicates that the trial court gave Ranes an opportunity to explain the reasons for his dissatisfaction with his counsel. Ranes complained that Attorney Kluge only spent an hour with him in the past three months and did not go over all the available evidence with him. (Tr. at 7.) Ranes further complained that his attorney did not file any of the motions or subpoenas that Ranes requested. (*Id.*) Ranes alleged that his attorney had been too busy with other cases and his case was not getting sufficient attention. (*Id.*) Based on these allegations, the trial court inquired further, attempting to determine what motions Attorney Kluge failed to file on Ranes behalf. Ranes responded that he had asked for a motion to suppress and one other motion, which he could not remember at the time. (Tr. at 7-8.) The trial court then directed its inquiry to Attorney Kluge, asking whether he could provide effective assistance of counsel to Ranes and whether he had spent adequate time with his client to prepare for trial. (Tr. at 8-9.) Attorney Kluge responded in the affirmative to both questions. (*Id.*)

**{¶11}** Ranes's allegations during the colloquy failed to show "a conflict of interest, a complete breakdown in communication, or an irreconcilable conflict which leads to an apparently unjust verdict." *Combs*, 3d Dist. Hancock No. 5-96-15, 1996 WL 518112, at *1. Indeed, Ranes's statements to the trial court indicated

that he had confidence in Attorney Kluge, but was dissatisfied with the amount of "face time" spent in preparation of trial. (Tr. at 8.) Ranes did not demonstrate, however, that the amount of time Attorney Kluge spent with him was too short for adequate trial preparation. He did not provide any evidence to show that Attorney Kluge was not prepared to provide effective assistance during his trial. Conversely, the record shows that Attorney Kluge engaged in discovery, filed and argued motions, and zealously represented his client at trial. He evaluated the issues for suppression and determined that Ranes made no statements to law enforcement. (Tr. at 123.) He further determined that Ranes lacked standing to raise many of the issues with respect to searches and seizures in the case and therefore, filing the motions to suppress requested by Ranes would be futile. (*Id.*)

{¶12} The inquiry conducted by the trial court was sufficient to satisfy the goal of determining whether Ranes demonstrated good cause for substitution of counsel. Due to Ranes's failure to demonstrate good cause for substitution of counsel on the day of the trial, the trial court's denial of his request was not an abuse of discretion. Accordingly, we overrule the first assignment of error.

### *Third Assignment of Error—Ineffective Assistance of Counsel*

{¶13} We take the third assignment of error out of order due to the nature of allegations being similar to those contained in the first assignment of error. Ranes contends that his trial counsel was ineffective because he "had spent as little as one hour prior to commencement of the trial with him." (App't Br. at 14.)

- 8 -

Furthermore, Ranes complains that his counsel "failed to present any substantial statement in mitigation of sentence." (*Id.*) No prejudice is claimed in this assignment of error.

{¶14} In order to prevail on a claim of ineffective assistance of counsel, a criminal defendant must first show that the counsel's performance was deficient in that it fell "below an objective standard of reasonable representation." *State v. Keith*, 79 Ohio St.3d 514, 534, 684 N.E.2d 47 (1997). Second, the defendant must show "that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial." *Id.*, citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In order to demonstrate prejudice, the defendant must prove a reasonable probability that the result of the trial would have been different but for his or her counsel's errors. *Id.*

{¶15} Because Ranes does not allege or demonstrate any prejudice, he fails to sustain his burden of establishing a claim of ineffective assistance of counsel. *See State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 62; *State v. Robinson*, 108 Ohio App.3d 428, 431, 670 N.E.2d 1077 (3d Dist.1996). Accordingly, we overrule the third assignment of error.

### *Second Assignment of Error—Other Acts Evidence*

{¶16} The second assignment of error challenges admissibility of the evidence. In order for evidence to be admissible it must be relevant. Evid. R. 402. " 'Relevant evidence' means evidence having any tendency to make the existence

of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid. R. 401. Generally, "[a]ll relevant evidence is admissible." Evid. R. 402. This general principle has several exceptions, which are encompassed in Evid.R. 402, 403, and 404. *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, ¶ 11-12. As applicable to this appeal, Evid.R. 404(B) provides, in pertinent part,

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Ohio Evid. R. 404. The Ohio Supreme Court explained this rule as follows:

> Evid.R. 404 codifies the common law with respect to evidence of other acts of wrongdoing. *State v. Lowe,* 69 Ohio St.3d 527, 530, 634 N.E.2d 616 (1994). The rule contemplates acts that may or may not be similar to the crime at issue. *State v. Broom,* 40 Ohio St.3d 277, 282, 533 N.E.2d 682 (1988). If the other act is offered for some relevant purpose other than to show character and propensity to commit crime, such as one of the purposes in the listing, the other act may be admissible. *Id.* Another consideration permitting the admission of certain other-acts evidence is whether the other acts "form part of the immediate background of the alleged act which forms the foundation of the crime charged in the indictment" and are "inextricably related" to the crime. *State v. Curry,* 43 Ohio St.2d 66, 73, 330 N.E.2d 720 (1975). *See also Broom* at 282, 533 N.E.2d 682.

*Morris* at ¶ 13. Therefore, although Evid.R. 404(B) "precludes admission of evidence of crimes, wrongs, or acts offered to prove the character of an accused to demonstrate conforming conduct, * * * it affords the trial court discretion to admit other acts evidence for any other purpose." *State v. Williams*, 134 Ohio St.3d 521,

2012-Ohio-5695, 983 N.E.2d 1278, ¶ 2 (2012). The Supreme Court noted that the discretion afforded by Evid.R. 404(B) to the trial court is "broad." *Id.* at ¶ 17.

{¶17} The basis of this assignment of error is Ranes's 2009 conviction from Paulding County for illegal assembly or possession of chemicals for the manufacture of drugs, a felony of the third degree in violation of R.C. 2925.041(A). (*See* State's Ex. 19.) Through his motion in limine Ranes argued that evidence of this prior conviction was highly prejudicial and that the State should be precluded from introducing it at trial. (R. at 31; Tr. at 116-117, 119-120.) At the hearing the State explained that it intended to show that certain materials, such as pseudoephedrine and other common household items, were purchased and assembled by Ranes. Although these materials could normally be used for innocent purposes, they could be used for illegal manufacture of methamphetamine. (Tr. at 118.) The State intended to use the evidence of prior conviction to prove that Ranes engaged in purchases and assembly of the commonly used and innocent supplies with an illegal intent of manufacturing drugs. (*Id.*) The State additionally indicated that the evidence had the tendency to establish opportunity, preparation, knowledge, "absence of mistake or accident in the purchase of the various materials needed for the manufacture of meth," and modus operandi, because "the process used in the '09 case was the same process used in this case." (Tr. at 118-119.)

{¶18} On appeal Ranes asserts that allowing the evidence was prejudicial. In particular, he argues that the evidence had little probative value and therefore, its probative value was substantially outweighed by the danger of unfair prejudice, and thus, it required exclusion under Evid.R. 403(A). We must emphasize that in order to warrant exclusion of evidence, its probative value must be "*substantially outweighed by the danger of unfair* prejudice, of confusion of the issues, or of misleading the jury." (Emphasis added.) Evid. R. 403(A). As the Ohio Supreme Court explained:

> " 'Exclusion on the basis of unfair prejudice involves more than a balance of mere prejudice. If unfair prejudice simply meant prejudice, anything adverse to a litigant's case would be excludable under Rule 403. Emphasis must be placed on the word "unfair." Unfair prejudice is that quality of evidence which might result in an improper basis for a jury decision. Consequently, if the evidence arouses the jury's emotional sympathies, evokes a sense of horror, or appeals to an instinct to punish, the evidence may be unfairly prejudicial. Usually, although not always, unfairly prejudicial evidence appeals to the jury's emotions rather than intellect.' "

*State v. Crotts*, 104 Ohio St.3d 432, 2004-Ohio-6550, 820 N.E.2d 302, ¶ 24 (2004), quoting *Oberlin v. Akron Gen. Med. Ctr.*, 91 Ohio St.3d 169, 172, 2001-Ohio-248, 743 N.E.2d 890 (2001).

{¶19} Nothing in the argument on appeal supports Ranes's contention that the probative value of the evidence at issue was *substantially* outweighed by the danger of *unfair* prejudice. While Ranes complains about prejudice from the admission of the evidence, he fails to point out how the evidence resulted in an

improper basis for the jury's decision in this case. Ranes does not demonstrate that the limited evidence proffered by the State did anything to arouse the jury's emotional sympathies, evoke a sense of horror, or appeal to an instinct to punish, as opposed to simply showing the fact that Ranes was previously convicted of illegal assembly or possession of chemicals for the manufacture of methamphetamine.

{¶20} This evidence had a tendency to make more probable the fact that Ranes had the criminal intent when purchasing and collecting items such as pseudoephedrine, and that he had the knowledge, opportunity, or preparation to manufacture methamphetamine. Thus, the testimony proffered by the State was relevant and fell within the permissible purposes under Evid.R. 404(B). Furthermore, its probative value was not substantially outweighed by the danger of unfair prejudice. Accordingly, the trial court did not abuse its discretion in denying the motion in limine.

{¶21} Ranes also complains about the method in which the State presented the evidence of the 2009 conviction at trial. A review of the record shows that the evidence of the 2009 conviction was introduced through the testimony of Ranes's probation officer, Mike Speice ("Officer Speice"). Officer Speice testified that in December 2008, he conducted a home visit at Ranes's residence and observed "drug paraphernalia within open sight." (Tr. at 283.) He testified that

subsequently Ranes was convicted of illegal assembly or possession of chemicals for the manufacture of methamphetamine. (Tr. at 283-284.)

{¶22} Ranes complains that this testimony did not serve to show knowledge, identity, or lack of mistake, but rather, it was "a clear attempt to show a propensity on the part of the defendant to commit crimes of this type." (App't Br. at 12.) Ranes, however, did not object during trial to this limited testimony by the State and did not ask for an exclusion of the evidence on the basis that it failed to serve the intended evidentiary purpose. Therefore, he forfeited this issue for the purpose of the current appeal. *See State v. Slagle*, 65 Ohio St.3d 597, 604, 605 N.E.2d 916 (1992) ("As a general rule an appellate court will not consider an alleged error that the complaining party did not bring to the trial court's attention at the time the alleged error is said to have occurred. This rule is a product of our adversarial system of justice. 'Its purpose is practical: to prevent the defensive trial tactic of remaining silent on a fatal error during trial with the expectation of demanding a reversal on appeal if the verdict is guilty.' "), quoting *State v. Craft*, 52 Ohio App.2d 1, 4, 367 N.E.2d 1221 (1st Dist.1977).

{¶23} Furthermore, the trial court gave limiting instructions to the jury, stating,

> Evidence was received about the commission of a past crime of the defendant of illegal assembly or possession of chemicals for the manufacture of drugs. That evidence was received only for a limited purpose. It was not received, and you may not consider it, to prove the character of the defendant in order to show that he acted in

conformity with that character. * * * you may consider that evidence only for the purpose of deciding whether it proves his intent or knowledge of circumstances surrounding the offense charged in Count Three in this trial. It may not be considered for any purpose relating to Count One and Two.

(Tr. at 566.) In *Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, at ¶ 24, the Ohio Supreme Court held that where the trial court instructed the jury that the evidence could not be used for impermissible propensity findings, the defendant was not unduly prejudiced.

**{¶24}** For the foregoing reasons, we overrule the second assignment of error.

### *Conclusion*

**{¶25}** Having reviewed the arguments, the briefs, and the record in this case, we find no error prejudicial to Appellant in the particulars assigned and argued. The judgment of the Common Pleas Court of Putnam County, Ohio is therefore affirmed.

*Judgment Affirmed*

**SHAW, P.J. and PRESTON, J., concur.**

**/hls**