[Cite as *State v. Price*, 2018-Ohio-1988.]

COURT OF APPEALS
HOLMES COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. John W. Wise, P.J. |
|  | : | Hon. W. Scott Gwin, J. |
| Plaintiff-Appellee | : | Hon. William B. Hoffman, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 17CA015 |
| JEREMY W. PRICE | : |  |
|  | : |  |
| Defendant-Appellant | : | OPINION |

CHARACTER OF PROCEEDING:    Criminal appeal from the Holmes County, Court of Common Pleas, Case No. 16CR077

JUDGMENT:    Affirmed

DATE OF JUDGMENT ENTRY:    May 18, 2018

APPEARANCES:

For Plaintiff-Appellee

SEAN WARNER
Holmes County Prosecutor's Office
164 East Jackson Street
Millersburg, OH 44654

For Defendant-Appellant

DAVID HUNTER
244 West Main Street
Loudonville, OH 44842

*Gwin, J.,*

{¶1} Appellant Jeremy W. Price ["Price"] appeals his conviction and sentence after a jury trial in the Holmes County Court of Common Pleas.

*Facts and Procedural History*

{¶2} On October 21, 2016, Price resided in Holmes County with his wife, Shelby Price, his stepdaughter, L.R. and children, M.P. and E. P. Price's nephew, Gus Price and his wife Alisha Kessler were living in the backyard in a tent at that time.

{¶3} Price and Gus came home from work and Shelby took Price, Gus and Alisha to the home of their boss, Andy O'Dell, to pick up their check and "hang out," while she returned home to watch six children.

{¶4} Sometime in the early morning of October 22, 2016, Alisha Kessler, after having been at Andy O'Dell's and having consumed alcohol, went to get a drink from Price's trailer. Upon entering the trailer, Alisha testified she saw Price's face between the legs of L.R. "licking her." T. at 137. After about "five minutes" of standing there watching, Alisha left to tell her husband Gus. Gus went to the trailer, looked in the window of the back door, and then went around to the front door and walked in the trailer. Gus testified he saw Price with Lilly on the couch with his face on her vagina. Price then "stood up and started playing with his penis trying to get it hard…." T. at 83. Gus enters the trailer, grabbed his child and walked out of the trailer.

{¶5} Neither Gus nor Alicia called the police to report what they observed. Instead they go to Holly Claypool's residence. Holly and her husband Nathan called Andy O'Dell. O'Dell', Dawn Colopy and Christopher Ross accompany Gus, Alicia, Holly and Nathan to Price's home. Holly Claypool calls the police.

{¶6} Holly Claypool testified that when Price was confronted about how he could do such a thing Price stated that he thought it was his wife. T. at 191. Holly further testified that L.R., in response to Price's statement that he would never hurt her, "interrupted him and was crying and said no daddy, you were messing with me and I kicked you off of me." T. at 190.

{¶7} The victim submitted to a SANE exam and a rape kit was submitted to BCI. BCI tests of L.R.'s vaginal samples tested presumptively positive for seminal fluid and no sperm were identified. T. at 305. "Presumptively positive" means that the test does not confirm the presence of seminal fluid it indicates seminal fluid may be present; there is no way to confirm that seminal fluid is present. T. at 306. Amylase, a component of saliva was found in L.R.'s underwear. T. at 309. However, there was not enough DNA present to identify anyone positively. T. at 321.

{¶8} The cutting from L.R.'s underwear indicated a mixture of more than one male with the major profile consistent with Price or any male coming from his father's side. T. at 334; 352. The amounts detected were .37 nanograms in the cutting and .31 nanograms in the swab. T. at 339. A "nanogram" is one billionth of a gram. T. at 339.

{¶9} The jury found Price guilty of one count of rape a felony of the first degree in violation of R.C. 2907.02(A)(1)(b) and R.C. 2907.02(B). The trial court sentenced Price to a term of ten years to life.

*Assignments of Error*

{¶10} Price raises three assignments of error:

{¶11} "I. THE TRIAL COURT ERRED IN PERMITTING CERTAIN EVIDENCE TO BE CONSIDERED BY THE JURY.

{¶12} "II. THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION TO DISMISS UNDER CRIM. R 29(A) AT THE CLOSE OF THE STATE'S CASE.

{¶13} "III. THE APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL."

I.

{¶14} In his first assignment of error, Price argues that it was plain error to allow evidence of his prior conviction, his propensity toward violence when drinking and hearsay evidence during his jury trial

**STANDARD OF APPELLATE REVIEW.**

**A. Plain error.**

{¶15} Price agrees that our standard of review is plain error because he did not object at trial.

{¶16} Crim.R. 52(B) affords appellate courts discretion to correct "[p]lain errors or defects affecting substantial rights" notwithstanding an accused's failure to meet his obligation to bring those errors to the attention of the trial court. However, the accused bears the burden to demonstrate plain error on the record, *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 16, and must show "an error, i.e., a deviation from a legal rule" that constitutes "an 'obvious' defect in the trial proceedings," *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002).

{¶17} Even if the error is obvious, it must have affected substantial rights, and "[w]e have interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial." Id. The Ohio Supreme Court recently clarified in *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, that the accused is

"required to demonstrate a reasonable *probability* that the error resulted in prejudice—the same deferential standard for reviewing ineffective assistance of counsel claims." (Emphasis sic.) Id. At ¶ 22, *citing United States v. Dominguez Benitez*, 542 U.S. 74, 81–83, 124 S.Ct. 2333, 159 L.Ed.2d 157 (2004). *Accord, State v. Thomas,* ___ Ohio St.3d ___, 2017-Ohio-8011, ___N.E.3d ____ (Oct. 4, 2017), ¶32-34.

{¶18} If the accused shows that the trial court committed plain error affecting the outcome of the proceeding, an appellate court is not required to correct it; the Supreme Court has "admonish[ed] courts to notice plain error 'with the utmost caution, under exceptional circumstances and *only* to prevent a manifest miscarriage of justice.'" (Emphasis added.) *Barnes* at 27, 759 N.E.2d 1240, *quoting State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus. *Accord, State v. Thomas,* ___ Ohio St.3d ___, 2017-Ohio-8011, ___N.E.3d ____ (Oct. 4, 2017), ¶32-34.

### B. Admissibility of evidence.

{¶19} "[A] trial court is vested with broad discretion in determining the admissibility of evidence in any particular case, so long as such discretion is exercised in line with the rules of procedure and evidence." *Rigby v. Lake Cty.*, 58 Ohio St.3d 269, 271, 569 N.E.2d 1056 (1991). "Ordinarily, we review a trial court's hearsay rulings for an abuse of discretion. *State v. Hymore*, 9 Ohio St.2d 122, 128, 224 N.E.2d 126 (1967). However, we review de novo evidentiary rulings that implicate the Confrontation Clause. *United States v. Henderson*, 626 F.3d 326, 333 (6th Cir. 2010)." *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, ¶97.

**ISSUES FOR APPEAL**

*A. Whether the trial court abused its discretion by admitting evidence of Price's prior conviction.*

*B. Whether the trial court abused its discretion by admitting evidence of Price's character for violence when drinking.*

{¶20} Evid.R. 404(A) provides that evidence of a person's character is not admissible to prove the person acted in conformity with that character. Evid.R. 404(B) sets forth an exception to the general rule against admitting evidence of a person's other bad acts. The Rule states as follows: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

{¶21} In *State v. Williams*, 134 Ohio St.3d 521, 983 N.E.2d 1278, 2012–Ohio–5695, the Ohio Supreme Court stated that trial courts should conduct a three-step analysis when considering the issue of "other acts" evidence:

> The first step is to consider whether the other acts evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Evid.R. 401. The next step is to consider whether evidence of the other crimes, wrongs, or acts is presented to prove the character of the accused in order to show activity in conformity therewith or whether the other acts evidence is presented for a legitimate purpose, such as those stated in

Evid.R. 404(B). The third step is to consider whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice. See Evid.R. 403.

Id. at ¶ 20.

{¶22} Furthermore, "other acts" evidence is admissible only if there is substantial proof that the alleged other acts were committed by the defendant and such evidence tends to show one of the matters enumerated in Evid.R. 404(B). *State v. Wagner*, 5th Dist. Licking 03 CA 82, 2004–Ohio–3941, ¶ 43, *citing State v. Echols*, 128 Ohio App.3d 677, 692, 716 N.E.2d 728 (1st Dist. 1998). This Court has recognized that the Ohio Revised Code does not define "substantial proof" in this context. *See State v. Burden*, 5th Dist. Stark No. 2012–CA–00074, 2013–Ohio–1628, ¶ 58. This Court also summarized as follows in *State v. King*, 5th Dist. Richland No. 08–CA–335, 2010–Ohio–4844: "We * * * do not believe that the substantial proof requirement necessitates that independent evidence corroborate other acts testimony. Instead, we believe that the substantial proof requirement is satisfied if at least one witness who has direct knowledge of the other act can testify to the other act. The jury may then fulfill its duty and evaluate the witness's testimony and credibility. * * *." Id. at ¶ 45.

{¶23} In the case at bar, the state did not submit evidence of Price's prior conviction to show Price acted in conformity with his prior behavior. Rather, the evidence was inadvertently referred to by Alisha Kessler who testified "I just knew he [Price] had been to prison before."

{¶24} Further, Gus Price testified Price "uh, yeah he would like yell at people, annoy people and then sometimes he would get violent." (T. at 101). Alisha Kessler

testified that, again upon direct examination by the state, "Yeah, cause sometimes when he gets, when he's drinking he just, he's not in the right state of mind really. (T. at 137).

{¶25} No evidence as to the charges or circumstances were elicited. The testimony was in response to the state's question addressing why Alisha and Gus did not confront Price when each witnessed him saw him engaged in oral sex with L.R.

{¶26} We must be mindful of the " * * * elementary proposition of law that an appellant, in order to secure reversal of a judgment against him, must not only show some error but must also show that that error was prejudicial to him." *See Smith v. Flesher*, 12 Ohio St.2d 107, 233 N.E.2d 137(1967); *State v. Stanton*, 15 Ohio St.2d 215, 217, 239 N.E.2d 92, 94(1968); *Wachovia Mtg. Corp. v. Aleshire*, Licking App. No. 09 CA 4, 2009–Ohio–5097 at ¶ 16. See, also, App. R. 12(D).

{¶27} In making a Crim.R. 52(A) harmless error analysis, any error will be deemed harmless if it did not affect the accused's "substantial rights." Otherwise stated, the accused has a constitutional guarantee to a trial free from prejudicial error, not necessarily one free of all error. Before constitutional error can be considered harmless, we must be able to "declare a belief that it was harmless be-yond a reasonable doubt." *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705(1967). Where there is no reasonable possibility that unlawful testimony contributed to a conviction, the error is harmless and therefore will not be grounds for reversal. *State v. Lytle*, 48 Ohio St.2d 391, 2 O.O.3d 495, 358 N.E.2d 623(1976), paragraph three of the syllabus, *vacated on other grounds in* (1978), 438 U.S. 910, 98 S.Ct. 3135, 57 L.Ed.2d 1154.

{¶28} We conclude, from a review of the entire record, that any error in the admission of the evidence would be "harmless beyond a reasonable doubt." *Chapman v.*

*California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705; *Harrington v. California*, 395 U.S. 250, 89 S .Ct. 1726, 23 L.Ed.2d 284(1969); *Schnabel v. Florida*, 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340(1972).

 *C. Whether "but for" the admission of hearsay evidence the result of the trial would have been different.*

**{¶29}** "[A] trial court is vested with broad discretion in determining the admissibility of evidence in any particular case, so long as such discretion is exercised in line with the rules of procedure and evidence." *Rigby v. Lake Cty.*, 58 Ohio St.3d 269, 271, 569 N.E.2d 1056 (1991). "Ordinarily, we review a trial court's hearsay rulings for an abuse of discretion. *State v. Hymore*, 9 Ohio St.2d 122, 128, 224 N.E.2d 126 (1967). However, we review de novo evidentiary rulings that implicate the Confrontation Clause. *United States v. Henderson*, 626 F.3d 326, 333 (6th Cir. 2010)." *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, ¶97.

**{¶30}** "Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Evid.R. 801. Hearsay is generally not admissible unless it falls within one of the recognized exceptions. Evid.R. 802; *State v. Steffen*, 31 Ohio St.3d 111, 119, 509 N.E.2d 383(1987).

**{¶31}** "The hearsay rule…is premised on the theory that out-of-court statements are subject to particular hazards. The declarant might be lying; he might have misperceived the events which he relates; he might have faulty memory; his words might be misunderstood or taken out of context by the listener. And the ways in which these dangers are minimized for in-court statements-the oath, the witness' awareness of the

gravity of the proceedings, the jury's ability to observe the witness' demeanor, and, most importantly, the right of the opponent to cross-examine-are generally absent for things said out of court." *Williamson v. United States*, 512 U.S. 594, 598,114 S.Ct. 2431, 2434(1994).

**{¶32}** In *State v. Crotts,* the Ohio Supreme Court explained,

As a legal term, "prejudice" is simply "[d]amage or detriment to one's legal rights or claims." Black's Law Dictionary (8th Ed.1999) 1218. Thus, it is fair to say that all relevant evidence is prejudicial. That is, evidence that tends to disprove a party's rendition of the facts necessarily harms that party's case. Accordingly, the rules of evidence do not attempt to bar all prejudicial evidence—to do so would make reaching any result extremely difficult. Rather, only evidence that is unfairly prejudicial is excludable.

"'Exclusion on the basis of unfair prejudice involves more than a balance of mere prejudice. If unfair prejudice simply meant prejudice, anything adverse to a litigant's case would be excludable under Rule 403. Emphasis must be placed on the word "unfair." Unfair prejudice is that quality of evidence which might result in an improper basis for a jury decision. Consequently, if the evidence arouses the jury's emotional sympathies, evokes a sense of horror, or appeals to an instinct to punish, the evidence may be unfairly prejudicial. Usually, although not always, unfairly prejudicial evidence appeals to the jury's emotions rather than intellect.' " *Oberlin v. Akron Gen. Med. Ctr.* (2001), 91 Ohio St.3d 169, 172, 743 N.E.2d 890, *quoting Weissenberger's Ohio Evidence* (2000) 85–87, Section 403.3.

104 Ohio St.3d 432, 2004-Ohio-6550, 820 N.E.2d 302, ¶ 23-24.

{¶33}   We note that any error will be deemed harmless if it did not affect the accused's "substantial rights."   Before constitutional error can be considered harmless, we must be able to "declare a belief that it was harmless beyond a reasonable doubt." *United States v. Chapman*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705(1967).   Where there is no reasonable possibility that unlawful testimony contributed to a conviction, the error is harmless and therefore will not be grounds for reversal.   *State v. Conway,* 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, ¶78, *citing Chapman; State v. Lytle*, 48 Ohio St.2d 391, 358 N.E.2d 623(1976), paragraph three of the syllabus, *vacated in part on other grounds Lytle v. Ohio*, 438 U.S. 910, 98 S.Ct. 3135, 57 L.Ed.2d 1154(1978). *See also, State v. Jones*, 135 Ohio St.3d 10, 2012-Ohio-5677, 984 N.E.2d 948, ¶177.

{¶34}   In the case at bar, Price cites the following testimony as inadmissible hearsay.

{¶35}   Gus Price testified, "I said to [L.R.], I said, we caught you, or we said we saw you [L.R.] and she said I know and hugged me and said thank you." (T. at  92-93).

{¶36}   We find this testimony to be harmless beyond a reasonable doubt. There is no reasonable possibility that the testimony contributed to Price's conviction. The testimony was not unfairly prejudicial.

{¶37}   Alisha Kessler testified, "I went straight back to her (Shelby's room) and I was like, did you have sex with your husband? And she said no." (T. at 144) Further, she testified, "I was talking to her (L.R.) on the couch and I finally, I was like I saw you [L.R.] and she says, I know, I know you saw me."  (T. at 145). Finally, she testified, "The next day after everything went down, she [L.R.] came up to the car... and walked up to me and

was like, thank you, thank you so much....  And she was like, I'm so scared though..." (T. at 150).

**{¶38}**   We find this testimony to be harmless beyond a reasonable doubt. There is no reasonable possibility that the testimony contributed to Price's conviction. The testimony was not unfairly prejudicial.

**{¶39}**   Holly Claypool testified regarding Shelby, "Did you suggest it to Shelby? Yes, Shelby did not want to call the Sheriff." (T. at 192) Further, she, referring to Shelby, "started arguing in my hallway ... she requested that she [L.R.] use the restroom.... Shelby was persistent... (T. at 195).

**{¶40}**   No specific statement made by Shelly was referred to in the above exchange; accordingly it was not hearsay. We find this testimony to be harmless beyond a reasonable doubt. There is no reasonable possibility that the testimony contributed to Price's conviction. The testimony was not unfairly prejudicial.

**{¶41}**   Nathan Claypool in his testimony, describes a conversation he had with L.R., "she just said, I don't know what's going on, you know I'm just waking up I don't know what's going on."  (T. at 229).

**{¶42}**   This statement does not refer to any specific act or statement of Price. We find this testimony to be harmless beyond a reasonable doubt. There is no reasonable possibility that the testimony contributed to Price's conviction. The testimony was not unfairly prejudicial.

**{¶43}**   Christopher Ross in his direct examination testified, "And that's when Shelby was in the kitchen and I looked at Shelby and said was you on the couch and she shook her head no." (T. at 241). Further, on question by the state," did she say anything,

Shelby? She just shook her head no and looked at the floor wouldn't look at me." (T. at 242). Finally, he testified that she sat by [L.R.] and asked her what happened and [L.R.] said "I don't remember ... I just know my daddy was messing with me and I kicked him off." (T. at 242).

{¶44} We find this testimony to be harmless beyond a reasonable doubt. There is no reasonable possibility that the testimony contributed to Price's conviction. The testimony was not unfairly prejudicial.

{¶45} Andrea Lever testified on behalf of the state regarding her conversation with Shelby Price at Akron Children's Hospital and the reason she and L.R. were there. Ms. Lever apparently asked Shelby if Shelby was concerned "anything happened" and Shelby stated, "She didn't believe that anything happened." (T. at 263).

{¶46} This testimony actually supported Price's defense that nothing had happened. We find this testimony to be harmless beyond a reasonable doubt. There is no reasonable possibility that the testimony contributed to Price's conviction. The testimony was not unfairly prejudicial.

{¶47} Hallie Dreyer, a forensic scientist with the Ohio Bureau of Criminal Investigation was questioned regarding a report, prepared by Dr. Theodore Kesses, the expert witness for the defense who was not called as a witness at trial. Ms. Dreyer testified as to her "conclusions" and "observations" regarding Dr. Kesses' report, and as to specifics found in the report. The report itself was never authenticated nor produced as an Exhibit at trial.

{¶48} While we find it error to allow testimony concerning a witness who does not testify and to a report that is not offered into evidence or even mentioned by the defense,

we find this testimony to be harmless beyond a reasonable doubt. There is no reasonable possibility that the testimony contributed to Price's conviction. The testimony was not unfairly prejudicial.

{¶49} Detective Lauriha testified on direct examination regarding a conversation he had with Shelby Price while transporting Ms. Price and L.R. to the hospital. Specifically, he stated, in answer to a direct question, that Ms. Price expressed doubt as to Price's guilt and the eyewitnesses' credibility. (T. at 371).

{¶50} This testimony actually supported Price's defense that nothing had happened. We find this testimony to be harmless beyond a reasonable doubt. There is no reasonable possibility that the testimony contributed to Price's conviction. The testimony was not unfairly prejudicial.

{¶51} Finally, Detective Henry testified that "he talked to Shelby and asked what did your daughter tell you" and she indicates "that my daughter can't remember but she says he was messing, uh, with her and she kicked him off." (T. at 436- 437).

{¶52} Detective Harry had not spoken to L.R. These statements were elicited to explain what information Detective Henry had before interviewing Price. Clearly the statements were not hearsay.

{¶53} An improper evidentiary ruling constitutes reversible error only when the error affects the substantial rights of the adverse party or the ruling is inconsistent with substantial justice. *O'Brien v. Angley*, 63 Ohio St.2d 159, 164–165, 407 N.E.2d 490 (1980). "'Generally, in order to find that substantial justice has been done to [a party] so as to prevent reversal of a judgment for errors occurring at the trial, the reviewing court must not only weigh the prejudicial effect of those errors but also determine that, if those

errors had not occurred, the jury or other trier of the facts would probably have made the same decision.' " Id., *quoting Hallworth v. Republic Steel Corp.* (1950), 153 Ohio St. 349, 41 O.O. 341, 91 N.E.2d 690, paragraph three of the syllabus.  *Accord, Beard v. Meridia Huron Hospital,* 106 Ohio St.3d 237, 2005-Ohio-4787, 834 N.E. 2d 323*, ¶35.

**{¶54}**   However, we cannot say that "but for" the testimony Price would not have been convicted.  In the case at bar, two individuals observed first hand Price's conduct with L.R. as it was occurring.  The state presented scientific evidence, including a DNA comparison to bolster the witness' testimony. Price did not object at trial so we are limited to reviewing only for plain error. We conclude that the trial court's admission of Detective Harry's testimony did not prejudice Price's substantial rights.

**{¶55}**   For all the above reasons, Price's First Assignment of Error is overruled.

II.

**{¶56}**   In his second assignment of error, Price contends that "setting aside all of the hearsay and improper evidence allowed by the trial court" there was insufficient evidence to convict Price.

**STANDARD OF APPELLATE REVIEW.**

**{¶57}**   In determining whether a trial court erred in overruling an appellant's motion for judgment of acquittal, the reviewing court focuses on the sufficiency of the evidence. See, *e.g., State v. Carter*, 72 Ohio St.3d 545, 553, 651 N.E.2d 965(1995); *State v. Jenks*, 61 Ohio St.3d 259, 273, 574 N.E.2d 492(1991), *superseded by State constitutional amendment on other grounds in State v. Smith*, 80 Ohio St.3d 89, 684 N.E.2d 668(1997).

**A. Sufficiency of the Evidence.**

{¶58}   The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury...."   This right, in conjunction with the Due Process Clause, requires that each of the material elements of a crime be proved to a jury beyond a reasonable doubt.  *Alleyne v. United States*, 570 U.S. __, 133 S.Ct. 2151, 2156, 186 L.Ed.2d 314 (2013); *Hurst v. Florida*, 136 S.Ct. 616, 621, 193 L.Ed.2d 504 (2016).   The test for the sufficiency of the evidence involves a question of law for resolution by the appellate court.  *State v. Walker,* 150 Ohio St.3d 409, 2016-Ohio-8295, 82 N.E.3d 1124, ¶30.   "This naturally entails a review of the elements of the charged offense and a review of the state's evidence."  *State v. Richardson,* 150 Ohio St.3d 554, 2016-Ohio-8448, 84 N.E.3d 993, ¶13.

{¶59}   When reviewing the sufficiency of the evidence, an appellate court does not ask whether the evidence should be believed.  *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus: *Walker,* at ¶30.   "The relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."  *Jenks* at paragraph two of the syllabus.  *State v. Poutney,* Oh.  Sup. Ct. No. 2016-1255, 2018-Ohio-22, 2018 WL 328882 (Jan. 4, 2018), ¶19.  Thus, "on review for evidentiary sufficiency we do not second-guess the jury's credibility determinations; rather, we ask whether, '*if believed*, [the evidence] would convince the average mind of the defendant's guilt beyond a reasonable doubt.'"  *State v. Murphy*, 91 Ohio St.3d 516, 543, 747 N.E.2d 765 (2001), *quoting Jenks* at paragraph two of the syllabus (emphasis added); *Walker* at ¶31.  We will not "disturb a verdict on appeal on sufficiency grounds

unless 'reasonable minds could not reach the conclusion reached by the trier-of-fact.'" *State v. Ketterer*, 111 Ohio St.3d 70, 2006-Ohio-5283, 855 N.E.2d 48, ¶ 94, *quoting State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997); *State v. Montgomery*, 148 Ohio St.3d 347, 2016-Ohio-5487, 71 N.E.3d 180, ¶74.

ISSUE FOR APPEAL

A. Whether, after viewing the evidence in the light most favorable to the prosecution, the evidence, "if believed, would convince the average mind of the defendant's guilt on each element of the crimes beyond a reasonable doubt."

**{¶60}** Price was convicted of rape of a person who is less than thirteen years old. R.C. 2907.02 provides,

(A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:

\* \* \*

(b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.

**{¶61}** "Sexual conduct" is defined to include "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse." R.C. 2907.01(A).

**{¶62}** Alisha Kessler saw Price's face between the legs of L.R. "licking her." T. at 137. After about "five minutes" of standing there watching, Alisha left to tell her husband Gus. Gus went to the trailer, looked in the window of the back door, and then went around to the front door and walked in the trailer. Gus testified he saw Price with Lilly on the couch with his face on her vagina. Price then "stood up and started playing with his penis trying to get it hard…." T. at 83.

**{¶63}** BCI tests of L.R.'s vaginal samples tested presumptively positive for seminal fluid and no sperm were identified. T. at 305. "Presumptively positive" means that the test does not confirm the presence of seminal fluid it indicates seminal fluid may be present; there is no way to confirm that seminal fluid is present. T. at 306. Amylase, a component of saliva was found in L.R.'s underwear. T. at 309. The cutting from L.R.'s underwear indicated a mixture of more than one male with the major profile consistent with Price or any male coming from his father's side. T. at 334; 352

**{¶64}** Holly Claypool testified that when Price was confronted about how he could do such a thing Price stated that he thought it was his wife. T. at 191.

**{¶65}** Viewing the evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Price had committed the crime of Rape of a person less than thirteen years of age. We hold, therefore, that the state met its burden of production regarding each element of the crime of Rape of a person less than thirteen years of age and, accordingly, there was sufficient evidence to support Price's conviction.

**{¶66}** Price's second assignment of error is overruled.

III.

**{¶67}** In his third assignment of error, Price contends that he was denied effective assistance of trial counsel because trial counsel failed to object to the inadmissible evidence as argued in his First Assignment of Error.

**STANDARD OF APPELLATE REVIEW.**

**{¶68}** To obtain a reversal of a conviction on the basis of ineffective assistance of counsel, the defendant must prove (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome of the proceeding. *Strickland v. Washington*, 466 U.S. 668, 687–688, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693(1984). A defendant's failure to satisfy one prong of the Strickland test negates a court's need to consider the other. *Strickland* at 697, 104 S.Ct. at 2069, 80 L.Ed.2d at 699; *State v. Madrigal*, 87 Ohio St.3d 378, 2000-Ohio-448, 721 N.E.2d 52 (2000).

ISSUE FOR APPEAL.

*A. Whether Price was prejudiced by trial counsel's performance.*

**{¶69}** "'The failure to object to error, alone, is not enough to sustain a claim of ineffective assistance of counsel.'" *State v. Fears*, 86 Ohio St.3d 329, 347, 715 N.E.2d 136 (1999), *quoting State v. Holloway*, 38 Ohio St.3d 239, 244, 527 N.E.2d 831(1988) *Accord, State v. Hale,* 119 Ohio St.3d 118, 2008-Ohio-3426, 892 N.E.2d 864, ¶233. A defendant must also show that he was materially prejudiced by the failure to object. *Holloway,* 38 Ohio St.3d at 244, 527 N.E.2d 831.

**{¶70}** As we discussed in our disposition of Price's First Assignment of Error, Price's substantial rights were not violated by the admission of evidence in his case. A

defendant has no constitutional right to determine trial tactics and strategy of counsel. *State v. Cowans*, 87 Ohio St.3d 68, 72, 717 N.E.2d 298(1999); *State v. Conway,* 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, ¶ 150; *State v. Donkers,* 170 Ohio App.3d 509, 867 N.E.2d 903, 2007-Ohio-1557, ¶ 183(11th Dist.). Rather, decisions about viable defenses are the exclusive domain of defense counsel after consulting with the defendant. Id. When there is no demonstration that counsel failed to research the facts or the law or that counsel was ignorant of a crucial defense, a reviewing court defers to counsel's judgment in the matter. *State v. Clayton*, 62 Ohio St.2d 45, 49, 402 N.E.2d 1189(1980), citing *People v. Miller*, 7 Cal.3d 562, 573-574, 102 Cal.Rptr. 841, 498 P.2d 1089(1972); *State v. Wiley*, 10th Dist. No. 03AP-340, 2004- Ohio-1008 at ¶ 21.

{¶71} Debatable strategic and tactical decisions may not form the basis of a claim for ineffective assistance of counsel. *State v. Phillips*, 74 Ohio St.3d 72, 85, 1995–Ohio– 171. Even if the wisdom of an approach is questionable, "debatable trial tactics" do not constitute ineffective assistance of counsel. Id. "Poor tactics of experienced counsel, however, even with disastrous result, may hardly be considered lack of due process * * *." *State v. Clayton*, 62 Ohio St.2d 45, 48, 402 N.E.2d 1189 (1980) (*quoting United States v. Denno,* 313 F.2d 364 (2nd Cir. 1963), *certiorari denied* 372 U.S. 978, 83 S.Ct. 1112, 10 L.Ed.2d 143.

{¶72} Trial counsel's failure to object did not prejudiced Price resulting in an unreliable or fundamentally unfair outcome of the proceeding. There is no "reasonable probability" that the trier of fact would not have found him guilty had counsel objected to the evidence.

{¶73}  We find no errors rising to the level of *Bradley* and *Strickland* nor any deficiency in trial counsel's performance that deprived Price of a fair trial.

{¶74}  Price's Third Assignment of Error is overruled.

{¶75}  The judgment of the Holmes County Court of Common Pleas is affirmed.


By Gwin, J.,

Wise, P.J., and

Hoffman, J., concur